UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------X
                                      :

EARL GOODWINE,                          :
                                        :
                 Plaintiff,             :
                                        :  12-CV-3882 (TLM)
          v.                            :
                                        :  June 21, 2013
NATIONAL RAILROAD PASSENGER CORP, et al, :  Brooklyn, New York
                                        :
                 Defendants.            :
                                        :
----------------------------------------X

TRANSCRIPT OF CIVIL CAUSE FOR DISCOVERY CONFERENCE
BEFORE THE HONORABLE JAMES ORENSTEIN
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:        EARL GOODWINE, Pro Se
                          249-48 148th Road
                          Rosedale, New York 11422


For the Defendant:        JOHN J. ROBERTS, ESQ.
                          Arseneault Whipple Fassett &
                           Azzarello, LLP
                          560 Main Street
                          Chatham, NJ 07928


Court Transcriber:        MARY GRECO
                          TypeWrite Word Processing Service
                          211 N. Milton Road
                          Saratoga Springs, NY 12866

Proceedings recorded by electronic sound recording,
transcript produced by transcription service

2

1  [Proceedings began at 10:36 a.m.]

2         THE CLERK:  Civil Caus For Discovery Conference,

3  Goodwine v. National RailRoad Passenger Corporation, et al,

4  docket number 12-CV-3882.  Will the parties please state your

5  appearances for the record starting with the plaintiff?

6         MR. GOODWINE:  Earl Goodwine.

7         THE COURT:  Good after.  Sorry, good morning.

8         MR. GOODWINE:  Good morning.

9         MR. ROBERTS:  And for the defendants, John Roberts

10  from Arseneault, Whipple, Fassett & Azzarello.

11         THE COURT:  Good morning.

12         MR. ROBERTS:  Good morning, Your Honor.  I apologize

13  for being late.  I had this on my calendar for 11 o'clock, so I

14  thought I was a half an hour early and not a half an hour late.

15  I apologize.

16         THE COURT:  That's okay.  I'm sure you'll be on time

17  in the future and --

18         MR. ROBERTS:  Absolutely.

19         THE COURT:  -- let's get to work.  And Mr. Goodwine,

20  I was going to say I had a little trouble hearing you, so just

21  keep your voice up if you would --

22         MR. GOODWINE:  Okay.

23         THE COURT:  -- and make sure that we can get you on

24  the microphone.

25         All right.  So as you recall, I was on the phone with

1   you when you had your conference I guess a week or two ago with

2   Judge Melancon.  Let me ask have you had any -- have you made

3   any progress on your own since that conference in terms of

4   moving forward on discovery?

5           MR. GOODWINE:  No, sir.

6           MR. ROBERTS:  No, Your Honor.

7           THE COURT:  Okay.  So I want to start with some I

8   guess old business.  There are some things that Judge

9   Pohorelsky had ordered when you were last before him in terms

10  of discovery.  Mr. Roberts, he ordered you to provide some

11  supplemental responses to interrogatories and document

12  requests.  Have you done that?

13          MR. ROBERTS:  No, Your Honor.  We filed a motion for

14  a protective order since that time because Judge Pohorelsky's

15  last order was inconsistent with a standing order that the

16  Court had entered prior to that which stated that --

17          THE COURT:  All right.  I'm telling you to do it

18  within one week, please.

19          MR. ROBERTS:  We will.

20          THE COURT:  Everything that was in Judge Pohorelsky's

21  order.  That motion is denied.

22          Folks, we're going to try this case, as you know.

23  Judge Melancon -- and I'm in complete accord with him that the

24  case should be tried and tried soon, and this is a relatively

25  simple dispute about what happened.  Let's get the discovery

4

1   done so we can have the trial, please.

2          So by June 28th the defendant will provide the

3   supplemental responses to interrogatories 12, 20, and 23 and

4   document request 28, 50 and 55.  I take it you don't need any

5   further guidance on the specifics.

6          MR. ROBERTS:  Pardon, Your Honor.  Those were

7   provided.  I apologize.

8          THE COURT:  Okay.

9          MR. ROBERTS:  I was confused about what you were

10  asking about.  I thought you were referring to some late

11  discovery requests that the plaintiff had made within the last

12  few weeks.

13         THE COURT:  No, no, no.

14         MR. ROBERTS:  I apologize.  The supplemental

15  discovery that was called for in document 35 we did provide

16  within the time that -- within the 14 days that the Court

17  requested.

18         THE COURT:  Mr. Goodwine, do you disagree that Mr.

19  Roberts provided those things?

20         MR. GOODWINE:  I disagree that Mr. Roberts complied

21  with the February 11th discovery.  He --

22         THE COURT:  I'm not asking about February 11th.  On

23  March 21st, Judge Pohorelsky ordered the defendant to provide

24  supplemental interrogatory responses to your interrogatories

25  12, 20, and 23 and document request 28, 50, and 55.

1          MR. GOODWINE:  I'm not --

2          THE COURT:  Mr. Roberts says he provided that.

3          MR. GOODWINE:  I believe so but I'm not exactly sure

4   off the top of my head --

5          THE COURT:  Okay.

6          MR. GOODWINE:  -- exactly which one.

7          THE COURT:  Okay.  But you don't have any reason to

8   doubt him when he says he actually did comply with that?

9          MR. GOODWINE:  I have reason to doubt because he's

10  kind of manipulative so --

11         THE COURT:  All right.  Let me --

12         MR. GOODWINE:  I mean I would have to --

13         THE COURT:  Excuse me --

14         MR. GOODWINE:  -- I would have to check my records.

15         THE COURT:  -- excuse me, Mr. Goodwine.  Let me say

16  something once with the expectation that it will be the last

17  time I say it.  Are you listening carefully?

18         MR. GOODWINE:  Okay.

19         THE COURT:  I don't want to hear from either side any

20  comments that are directed to the person across the table

21  describing somebody as manipulative or misleading, or something

22  like that.  If you have a reason to say that he didn't do what

23  he says he did, you tell me that.

24         MR. GOODWINE:  Okay.

25         THE COURT:  But if it's a general mistrust, I'm

6

1    simply not interested because it doesn't help me decide

2    anything that I have to decide.

3            MR. GOODWINE:  All right.

4            THE COURT:  Do you understand that?

5            MR. GOODWINE:  Yeah, I hear you.

6            THE COURT:  And Mr. Roberts, do you understand that?

7            MR. ROBERTS:  Yes, Your Honor.

8            THE COURT:  Okay.  Good.  So we'll stick to the

9    specific issues that are in front of me.  Okay.  Judge

10   Pohorelsky also directed you, Mr. Roberts, to provide any

11   documents relating to the plaintiff's filing the missing

12   property report.  Did you do that?

13           MR. ROBERTS:  Yes, Your Honor, we did.

14           THE COURT:  Were there any such documents?

15           MR. ROBERTS:  Yes, Your Honor.  There was several

16   documents of a property log --

17           THE COURT:  Okay.

18           MR. ROBERTS:  -- and a receipt if you will.

19           THE COURT:  Okay.

20           MR. ROBERTS:  And we did provide those to the

21   plaintiff.

22           THE COURT:  Did you get those?

23           MR. GOODWINE:  I received those but I didn't receive

24   the ones that I filed with Amtrak police, the lost and found

25   department that they told me to file.

1          THE COURT:  Did you look for those?

2          MR. ROBERTS:  We did, Your Honor, and we found none.

3          THE COURT:  Okay.

4          MR. ROBERTS:  I believe that we entered -- we filed

5    with the Court a letter stating that.

6          THE COURT:  Okay.  And look, Mr. Goodwine, one thing

7    that happens with some regularity is a party says, "Give me

8    these documents or these records that you have," and the

9    opposing party says, "I've looked and we don't have them."

10   Sometimes the party who makes the request says, "That can't be

11   right, that doesn't sound right."  You may have reason to think

12   so but absence of evidence to show that the answer is false,

13   there's really little I can do because I rely on both sides to

14   say, "Look, I've given you everything I have in response to

15   this request."  So unless you have some reason to believe that

16   they actually do have it and they're not giving it to you, and

17   I'm happy to hear that if you do -- I'm going to leave it at

18   that.

19         MR. GOODWINE:  I believe they -- I'm not sure if they

20   still have it, but I believe it falls under spoilation because

21   the video that was also requested they allowed to recycle.

22         THE COURT:  Yes.

23         MR. GOODWINE:  And I requested that in 2010 and I

24   never received that.

25         THE COURT:  Right.  You filed a lost and found with

8

1  the -- you filed a lost and found, correct?

2          MR. GOODWINE:  Yes.

3          THE COURT:  Okay.  And you said you've checked for

4  that?

5          MR. ROBERTS:  That's right, Your Honor.  There was

6  only one complaint filed with Amtrak and it included both the

7  excessive force claims as well as at the bottom of that page a

8  statement that three documents were missing.  That's the only

9  one --

10         THE COURT:  No, no, he's saying he went to lost and

11 found.  Did you go to the lost and found department?

12         MR. ROBERTS:  We did.

13         THE COURT:  Okay.

14         MR. ROBERTS:  We have --

15         THE COURT:  Would you please provide some

16 description, it could be a letter or an affidavit, however you

17 think that, you know, the procedures lost and found has to

18 retain claim forms.

19         MR. ROBERTS:  Yes, we will.

20         THE COURT:  How long they're retained and what

21 happens to them.

22         MR. ROBERTS:  Yes, Your Honor.

23         THE COURT:  Okay.  So I'm just going to start making

24 notes of the things that have to be done.

25         MR. GOODWINE:  Your Honor?

9

1           THE COURT:  Just give me a moment to make a note

2    before I forget.

3                     [Pause in proceedings.]

4           THE COURT:  Yes, Mr. Goodwine?

5           MR. GOODWINE:  If possible, can I subpoena the person

6    or request to have the person that worked at the lost and

7    found?

8           THE COURT:  No.

9           MR. GOODWINE:  No?

10          THE COURT:  No.  And let me explain where we are and

11   how one could approach this because I anticipate that you may

12   have some similar requests for subpoenas.  We are fairly far

13   along into the discovery phase.  We are trying to wrap things

14   up to get you to trial.  A subpoena for the person who runs the

15   lost and found is something that I would consider collateral to

16   the issue in the case and it's more about challenging the

17   veracity, you know, the accuracy of what they tell you they

18   have and don't have.  I'm not going to allow discovery to that

19   sort of thing.  I very much want both sides to have access to

20   the information, the records and answers about what happened in

21   the case that affects the jury's ability to figure out whether

22   there was a false arrest or excessive force used.  But I'm not

23   going to allow sort of open ended discovery into questioning

24   when one party says, "I don't have a document," to allow the

25   other party to say, "Well, I think you do."

10

1          MR. GOODWINE:  I think you're misinformed but --

2          THE COURT:  I'm misinformed about what?

3          MR. GOODWINE:  I want to question the person I filed

4  it with --

5          THE COURT:  Yes.

6          MR. GOODWINE:  -- because I repeatedly filed it with

7  the same person.

8          THE COURT:  All right.

9          MR. GOODWINE:  That's why I feel the jury should

10 understand how many times that I repeatedly filed for this

11 paper because --

12         THE COURT:  I think that's something where we're

13 going to disagree, but I'm not going to permit that kind of

14 discovery because remember, the case is about what happened at

15 the time of your arrest.

16         MR. GOODWINE:  Right.

17         THE COURT:  Was there a legal basis for your arrest,

18 how did they treat you --

19         MR. GOODWINE:  Right.

20         THE COURT:  -- at the time of your arrest, and what

21 did they do with your documents.  That's what the jury -- and

22 part of this gets to what's admissible in front of the jury.

23 So things that go to those questions, generally speaking with

24 some important limitations, are going to be admissible.  One of

25 the important limitations, for example, is hearsay.  But what's

11

1   generally not going to be admissible is questions about, "Well

2   what happens to the evidence?" and "I'm going to prove that I

3   really thought I lost something because I kept going back to

4   you and saying I want it."  I understand that you might

5   disagree about whether that's the good or bad way to proceed,

6   but that is the general limitation on what's going to be before

7   the jury.  I want to make sure that the discovery gets at your

8   ability to put those things in front of the jury.  All right?

9          Okay.  Next is a statement concerning whether Amtrak

10  has any ownership or other interest in Lowe's or North Shore

11  Hospital.  Have you provided that?

12          MR. ROBERTS:  Yes, Your Honor.

13          THE COURT:  Mr. Goodwine, did you get that?

14          MR. GOODWINE:  I disagree because that's not the

15  request that I asked for.  I asked if they had any relation to

16  Amtrak or Lowe's Home Improvement.  The judge --

17          THE COURT:  All right.  I'm less interested in what

18  you asked for than what Judge Pohorelsky ordered because I'm

19  not going to revisit rulings that were already made in this

20  case.

21          MR. GOODWINE:  That's not what I wanted, so it does

22  me no good.

23          THE COURT:  Okay.  There may be a number of things

24  where you think a ruling that was made earlier isn't what you

25  want --

12

1       MR. GOODWINE:  But if --

2       THE COURT:  -- but I'm not reconsidering a discovery

3  ruling that Judge Pohorelsky made.

4       MR. GOODWINE:  So I have a question.

5       THE COURT:  Yes.

6       MR. GOODWINE:  If I ask for something and it's stated

7  on the record like we're recording this now --

8       THE COURT:  Yes.

9       MR. GOODWINE:  -- and the judge says one thing like

10  "I agree with what you're saying, I'm going to order that," and

11  then they write down something different and I received it as

12  something different, and then I say, "Your Honor, this is not

13  what we agreed upon, can we reflect on the record?" I can't get

14  that?  That's what you're saying.

15       THE COURT:  I will ask the question of Mr. Roberts.

16  Does Amtrak have any relationship of any sort, other than

17  occasionally carrying employees of these other entities on its

18  trains, does it have any kind of corporate relationship with

19  either of those entities?

20       MR. ROBERTS:  No, Your Honor.

21       THE COURT:  Does that answer your question?

22       MR. GOODWINE:  That's good for me.

23       THE COURT:  Okay.  Good.  All right.  Then turning to

24  orders that Judge Pohorelsky made to you, Mr. Goodwine, he

25  ordered you to appear for your deposition by April 11th, or on

13

1  April 11th.  Did you do that?

2          MR. GOODWINE:  No.

3          THE COURT:  All right.  Let's set a date for you to

4  appear for your deposition.

5          MR. GOODWINE:  Oh, Your Honor, we had the deposition.

6          THE COURT:  Oh, you did?  I'm sorry.

7          MR. GOODWINE:  But what happened was I --

8          THE COURT:  All right.  It doesn't matter.  You had

9  it and --

10          MR. GOODWINE:  No, I just want to explain because I

11  was sanctioned and I don't think that Your Honor knew all the

12  facts.  I emailed Mr. --

13          THE COURT:  Mr. Goodwine?

14          MR. GOODWINE:  Yes.

15          THE COURT:  You've done this several times.  I'm

16  going to ask you to stop doing it.  I will try and get to

17  everything but I'm going to try to do it in an order that makes

18  sense to me so I don't forget to do something.

19          MR. GOODWINE:  Okay.

20          THE COURT:  At the end if I've missed something, I

21  will ask you.

22          MR. GOODWINE:  Okay.

23          THE COURT:  Okay?  So please let me do it in the

24  order that I'm trying to do it so I don't forget something.

25          Mr. Roberts, are you satisfied that you've gotten the

14

1  deposition that was ordered?

2          MR. ROBERTS:  We began the deposition, Your Honor,

3  but we filed a motion to continue the deposition.

4          THE COURT:  Right.  And I'm aware that that motion is

5  pending.  Tell me what your concern is.

6          MR. ROBERTS:  The deposition lasted in total about

7  four and a half hours and we have just a couple of issues that

8  we also wanted to explore.  Because of delays during the day of

9  the deposition we finished at 5 or a little after 5 o'clock and

10 we still had a few more things to go forward with and were

11 unable to finish.

12         THE COURT:  About how long do you think you need?

13         MR. ROBERTS:  Within two hours.  Two hours.

14         THE COURT:  Are you willing to do that?

15         MR. GOODWINE:  No, because we started at 10 o'clock

16 and ended at 5.

17         THE COURT:  All right.  I'm going to order you to

18 appear for no more than two hours.  However, if after that two

19 hours there is still some question about whether the defendant

20 has had an adequate opportunity to questions because of delays

21 within the two hours, I'll consider it.  I very much hope that

22 it will just proceed question and answer, question and answer.

23 I'm going to be skeptical about any request for something

24 beyond the two hours, but I will order that to happen.  Any

25 reason why you can't do that within the next week?

15

1          MR. GOODWINE:  I don't have the income to -- can we

2   do it over the phone?

3          THE COURT:  No.  Where would you do it?

4          MR. ROBERTS:  We can do it here at the courtroom.

5   That was Mr. Goodwine's request and the Court granted it last

6   time.

7          THE COURT:  You want to do that here?

8          MR. GOODWINE:  I really can't afford to come back and

9   forth.  I feel the deposition -- I was there more than seven

10  hours.  I was there since 10 o'clock.  It started at 10 and we

11  breaked [sic] to speak to the judge for maybe 20 minutes, and

12  it ended at 5:20.  So that's over seven --

13         THE COURT:  All right.  I'm not revisiting that

14  ruling that you're going to appear.

15         MR. GOODWINE:  But you are revisiting it if --

16         THE COURT:  Mr. Goodwine --

17         MR. GOODWINE:  Okay.

18         THE COURT:  -- you may not like some of the rulings I

19  give you.  I anticipate that that's going to be the case

20  sometimes and others you're going to like.  But when I rule

21  against you, I'm not opening the floor for further discussion

22  on it.

23         MR. GOODWINE:  Okay.

24         THE COURT:  Okay?  Because you know that way, because

25  if you do that, then he can do it and then we never get done.

1            MR. GOODWINE:  All right.

2            THE COURT:  So I will ask for you to appear for two

3    hours and I'm going to order that.  I want to do it in a way

4    that is as convenient as possible so that you don't bear

5    unnecessary costs.  What is the least expensive way for you to

6    do that?

7            MR. GOODWINE:  By telephone conference.

8            THE COURT:  Are you willing to do it by telephone?

9            MR. ROBERTS:  Yes, we could do that.

10           THE COURT:  All right.  Within one week arrange among

11   yourselves the telephone deposition of no more than two hours.

12           MR. ROBERTS:  Thank you, Your Honor.

13           MR. GOODWINE:  Thank you.

14           THE COURT:  Then Judge Pohorelsky ordered you, Mr.

15   Goodwine, to provide written responses to any requests for

16   documents or interrogatories that the defendant had served you

17   with as well as notarized authorization for the release of

18   medical records.  Have you done that?

19           MR. GOODWINE:  Yes, sir.

20           THE COURT:  Do you agree?

21           MR. ROBERTS:  Your Honor, Mr. Goodwine did not sign

22   his responses to interrogatories which he emailed to us --

23           THE COURT:  Do you have them?

24           MR. ROBERTS:  -- and we'd just request that he sign

25   them.

17

1          THE COURT:  Do you have them with you?

2          MR. ROBERTS:  Yes, I do.

3          THE COURT:  Okay.  Can you sign them here?

4          MR. GOODWINE:  Yes.

5          THE COURT:  Okay.

6          MR. GOODWINE:  Your Honor, we had an agreement with

7    the other attorney that I emailed because of the --

8          THE COURT:  You know --

9          MR. GOODWINE:  I know, I'm just trying to explain --

10          THE COURT:  I appreciate it because what it says to

11    me is that you don't want me to think badly --

12          MR. GOODWINE:  Yes.

13          THE COURT:  -- of you.  I assure you I'm not going to

14    think badly because somebody has or hasn't done something.  I

15    really just want to move forward and I want to move forward as

16    efficiently as possible because I suspect we have a lot of

17    ground to cover.  So --

18          MR. ROBERTS:  And Your Honor, with respect to the

19    document requests, Mr. Goodwine objected to all six of them and

20    did not provide any documents.

21          THE COURT:  All right.  Let's go through them one by

22    one, but first let's get the responses signed.

23          MR. GOODWINE:  Your Honor --

24          THE COURT:  We'll go through them one by one but

25    first I want to get the --

18

1          MR. GOODWINE:  All right.

2          THE COURT:  Mr. Goodwine, really, one thing at a

3   time.  And if you want to make a list of things as we go on so

4   we don't forget it, that's fine, but I really just want to go

5   in order.  I'm easily distracted.

6          MR. ROBERTS:  I have the interrogatory responses.

7          MR. GOODWINE:  When you say exhibit, is that --

8          MR. ROBERTS:  I provided Mr. Goodwine with a copy of

9   the interrogatory responses that were used as an exhibit at his

10  deposition, so one page is marked as an exhibit with an exhibit

11  tag.

12         THE COURT:  Again, take a moment to look through it.

13  Make sure that those are your answers.  And just so you know,

14  the rule that technically requires the answers to

15  interrogatories to be signed under oath, so when you're ready

16  to sign them, just let me know and I'll ask you to raise your

17  right hand and --

18         MR. GOODWINE:  Raised now.

19         THE COURT:  Okay.  Do you swear that the answers you

20  have given to those interrogatories as written in the document

21  you're holding in your hand right now are the truth, the whole

22  truth, and nothing but the truth?

23         MR. GOODWINE:  Yes, sir.

24         THE COURT:  Okay.  Then please sign them.

25         MR. ROBERTS:  Thank you.

19

1              THE COURT:  Okay.  Document requests.  These are I

2    think in your letter, are they not?

3              MR. ROBERTS:  Yes, Your Honor.

4              THE COURT:  Okay.  Let's get to those.  All right.

5    Federal and state tax returns [indiscernible]?

6              MR. ROBERTS:  No, Your Honor --

7              THE COURT:  Oh no, those are the ones that you

8    requested at the deposition.

9              MR. ROBERTS:  Right.  They start on Page 2.

10             THE COURT:  Right.

11             MR. ROBERTS:  Any and all documentation.

12             THE COURT:  Okay.  Yes.  So do you have any

13   documents, Mr. Goodwine, that you're going to offer in evidence

14   at trial that you have in your possession?  Not here with you

15   but that you have plans to offer at trial?

16             MR. GOODWINE:  I have some documents but the reason

17   why I objected is because I asked the judge for direction and I

18   still haven't gotten an answer.

19             THE COURT:  About whether --

20             MR. GOODWINE:  About my ideas and stuff that

21   defendant parties are asking me to --

22             THE COURT:  Okay.

23             MR. GOODWINE:  -- explore, and I feel that not all my

24   ideas are patented.  I don't want to just put it in public

25   record.

20

1          THE COURT:  Okay.  Well, documents provided in

2     discovery are generally not in the public record.  You don't

3     file them on the docket, you just give them to the other side.

4     If you're concerned with what they might do with them, I'm sure

5     you can put together a confidentiality order.  That's done all

6     the time.  We have businesses with trade secrets that sue each

7     other and are very concerned about exactly the same thing.

8     It's handled easily all the time.  So I'll ask within one week

9     you have a confidentiality order.  But let me just say this.  I

10    want that to be protected, but until a confidentiality order is

11    signed, I'm going to order that any documents that you provide

12    to the defendant cannot be used by the defendant for any

13    purpose other than this litigation and may not be disseminated

14    to any party, to anyone other than the defendant and its

15    counsel.  And do you anticipate any experts?

16          MR. ROBERTS:  No, not with respect to --

17          THE COURT:  So if it's just Amtrak and its counsel,

18    that doesn't hamper your ability to prepare for litigation,

19    correct?

20          MR. ROBERTS:  That's correct, Your Honor.

21          THE COURT:  Okay.  Does that satisfy you?

22          MR. GOODWINE:  Yes.  Can I just make -- you know, the

23    purpose of wanting to know ideas and stuff like that, what is

24    the relevance?

25          THE COURT:  The relevance, it's obvious to me at

1  least for this first request, is if you're going to offer it at

2  trial, not only do they have a right to see it before the

3  trial, you had an obligation since the day you started this

4  case to provide it to them.  It's part of the rules on both

5  sides the parties have an obligation to give to its adversary

6  the documents it's going to offer at trial.

7          MR. GOODWINE:  Right.  I'm at liberty to disclose

8  which ideas I want to because --

9          THE COURT:  Let me make it as simple as I can.  If

10 it's something that you want the ability to offer at trial, you

11 must give it --

12         MR. GOODWINE:  Okay.

13         THE COURT:  -- to opposing counsel.  If you don't

14 give it to opposing counsel, I'm going to order that you're not

15 allowed to use it at the trial.

16         MR. GOODWINE:  I understand.

17         THE COURT:  Unless of course it's -- there's always a

18 possibility that you'll discover something later and you have a

19 good explanation why you weren't able to give it.

20         MR. GOODWINE:  Okay.

21         THE COURT:  All right?  Okay.  So any documents that

22 you intend to use to prove your allegations at trial must be

23 disclosed within one week.  And as reflected on the record of

24 today's proceeding, I've ordered confidentiality.  If you want

25 to have some different agreement about that, you can come up

1  with it, but I'm sure it protects your interest and it may be

2  sufficient to protect yours.

3         MR. ROBERTS:  Yes.

4         THE COURT:  Okay.

5         MR. ROBERTS:  Very good, Your Honor.  Thank you.

6         MR. GOODWINE:  Your Honor, will I get the

7  confidentiality papers before I submit?

8         THE COURT:  Well, that's what I just said.  You guys

9  can come up with any agreement that you want.

10         MR. GOODWINE:  Okay.

11         THE COURT:  And of course you would get that.  But I

12  don't want the discovery to be delayed.

13         MR. GOODWINE:  Right.

14         THE COURT:  And I'm sensitive to your concern.  So I

15  have entered an order that is now binding on Amtrak that to the

16  extent they get documents from you, unless there's some other

17  order that takes precedence, you know, that's later entered,

18  they can't do anything with those documents except use them to

19  prepare for trial, and they can't give them to anybody, you

20  know, outside of Amtrak and the lawyers who are representing

21  them.

22         MR. GOODWINE:  Okay.

23         THE COURT:  Okay?  Next -- and this may be just a

24  subset of the first one --

25         MR. ROBERTS:  I think all the rest of them are

23

1  subsets, Your Honor.

2          THE COURT:  Yes.  Any documents to support any claim

3  that you were a passenger or customer of New Jersey Transit at

4  the time of our arrest including, but not limited to, train

5  tickets, receipts, passes, and statements.  Provided those

6  documents?  Or have you done that yet?

7          MR. GOODWINE:  I objected because I didn't know how

8  to proceed.  Now that you gave me a little bit of information,

9  I --

10         THE COURT:  Okay.  Now, one thing.  Do you have --

11 are you able to make copies of any documents that you provide?

12         MR. GOODWINE:  Not really.

13         THE COURT:  Okay.  May I ask you, because I really

14 want to avoid fights down the road over what was given and what

15 wasn't, arrange a time to get together so that you're going to

16 give the documents and at that time either give a receipt along

17 with -- I think the safest thing would be to give some form of

18 receipt and make a set that says here's, you know, a copy of

19 what I received, give the copies back to Mr. Goodwine, or keep

20 the copies.  I think that'll probably be sufficient for your

21 purpose, right?

22         MR. ROBERTS:  Yes, Your Honor.

23         THE COURT:  Okay.  Make a set of copies and give the

24 originals back to Mr. Goodwine.

25         MR. ROBERTS:  Will do.  May I suggest that we can do

24

1   this all a week from today along with the deposition?  We can

2   all meet here at the court and do it at that time.

3          THE COURT:  Will that work for you?  Oh no, no,

4   you're going to do the deposition by phone.

5          MR. GOODWINE:  I'm going to do the deposition by

6   phone.

7          THE COURT:  Yes.

8          MR. ROBERTS:  Well, we can do it a week from today

9   here at the courtroom?

10          THE COURT:  However you do it.  I'd like it to be

11   done within a week.

12          MR. GOODWINE:  We'll work something out.

13          THE COURT:  Okay.  Very good.  So that's good.  Do

14   you have tickets that you had at the time of your arrest?

15          MR. GOODWINE:  Excuse me?

16          THE COURT:  You have the ticket that you had at the

17   time of arrest?

18          MR. GOODWINE:  It was submitted to the court, so I

19   don't know how to go about getting that.

20          THE COURT:  When you say you submitted it --

21          MR. GOODWINE:  During the arrest.

22          THE COURT:  Oh --

23          MR. GOODWINE:  Right after the arrest, my lawyer or

24   the public defender asked to make copies of the train tickets.

25   I gave it to him.  So I don't know --

25

1          THE COURT:  Have you given the name to --

2          MR. GOODWINE:  Excuse me?

3          THE COURT:  Have you given Mr. Roberts or his

4    predecessor the name of that lawyer?

5          MR. GOODWINE:  I can't recollect the lady's name.

6          THE COURT:  Okay.  So look, there may be some further

7    efforts that we make later to find it.

8          MR. GOODWINE:  Okay.

9          THE COURT:  But to the extent you have anything that

10   meets that description, you know, any kind of ticket or pass

11   that shows that you were a customer of NJ Transit at the time

12   of the arrest, that's part of what you have to be able to

13   prove.

14         MR. GOODWINE:  Would I barred for not using it if

15   we're able to obtain it from that court system after --

16         THE COURT:  No, not at all.

17         MR. GOODWINE:  Okay.

18         THE COURT:  But the point is you have to provide --

19   and I do want to just get this moving because you're going to

20   be going to trial sooner rather than later.  If you have it,

21   you provide it.  If you come up with it later and the

22   explanation is, "Well, I just got it from my lawyer, from the

23   court system," I doubt Mr. Roberts will object, but if he does,

24   I doubt the Court will give you a problem.  The only thing you

25   have to worry about is you come up with the document later and

26

1  you don't have a good explanation as to why you didn't give it

2  now.

3          MR. GOODWINE:  Right.

4          THE COURT:  Okay?  Next, any and all documentation of

5  the injuries you claim you sustained as a result of the

6  incident including photographs, medical records, and

7  contemporaneous statements.  Do you have anything along those

8  lines?

9          MR. GOODWINE:  He retained all the information but I

10 have some additional stuff that I can give him.

11         THE COURT:  Okay.  So provide that.

12         MR. GOODWINE:  Yeah.

13         THE COURT:  Okay.  Documents made by the plaintiff

14 regarding the incidents including email, letters,

15 correspondence, memos, et cetera.  Do you have anything like

16 that that you later recorded describing the incident?

17         MR. GOODWINE:  I submitted that in the pro se

18 department already.  It's in the case load.

19         THE COURT:  Okay.  Do you have that, Mr. Roberts?

20         MR. ROBERTS:  No, Your Honor.  I'm not sure what he's

21 referring to.  He objected to our request.

22         MR. GOODWINE:  I submitted -- there's documentations

23 of emails to Amtrak in 2010.  It's in the paperwork.

24         THE COURT:  That you previously filed in this case?

25         MR. GOODWINE:  Yes.

27

1              THE COURT:  Okay.  So if it --

2              MR. GOODWINE:  If he looks downstairs, it'll be

3    there.

4              THE COURT:  Well, I suspect --

5              MR. GOODWINE:  I believe that was on --

6              THE COURT:  Yes.  I was going to say --

7              MR. GOODWINE:  -- April 11th.

8              THE COURT:  -- I suspect it's something that's

9    already on the docket.

10             MR. ROBERTS:  I understand.

11             THE COURT:  Let me just take a quick look at the file

12   here.  Let me see.  Yes, here we go.

13             MR. ROBERTS:  I understand Mr. Goodwine to be saying

14   that he's referring to emails that may have been attached as

15   exhibits to motions and other papers that he's filed with the

16   Court.

17             THE COURT:  Yes.

18             MR. ROBERTS:  I understand that.

19             THE COURT:  I'm sure this is not the only place to

20   find it, but for example, document 71-2 filed on May 23rd has an

21   email from Mr. Goodwine to you.

22             MR. ROBERTS:  Yes.

23             THE COURT:  Okay.  So that's the type of thing you're

24   referring to, right?

25             MR. GOODWINE:  Yes.  But I'm talking about this one

28

1   was directly to Amtrak in 2010.

2           THE COURT:  Okay.

3           MR. GOODWINE:  But it's in the system.

4           THE COURT:  Right.  Okay.  What I'm talking about is

5   there anything else that isn't already in the court docket?

6           MR. GOODWINE:  If I find anything that I want to

7   submit, I'll submit it.

8           THE COURT:  Okay.  I'm just going to ask that you

9   look carefully because it's the same principle.

10          MR. GOODWINE:  Okay.

11          THE COURT:  If you have it now and you don't give it

12  till later, you may not get to use it.

13          MR. GOODWINE:  I understand.

14          THE COURT:  Okay.

15          MR. GOODWINE:  Here.

16          THE COURT:  Is it about what we were just talking

17  about?

18          MR. GOODWINE:  It's about using certain information

19  and vice versa.

20          THE COURT:  Go ahead.

21          MR. GOODWINE:  I filed a motion to have some

22  information precluded and defendant has come up with this

23  information after the recusal --

24          THE COURT:  Okay.  I'm going to ask you -- like I

25  said, I'm going to get to --

29

1          MR. GOODWINE:  I understand.

2          THE COURT:  -- anything that's on your agenda and Mr.

3   Roberts', but first I want to get to mine.  Okay.  Next is

4   statements by third party witnesses, people other than

5   yourself, about the incident.  Do you have anything like that?

6          MR. GOODWINE:  I was going to produce some witnesses

7   but again, it was addressed in my motion.  I know you don't

8   want to read it.

9          THE COURT:  Just tell me what you have in terms of

10  other people who --

11         MR. GOODWINE:  It's kind of an awkward situation how

12  to explain it because in my docket sheet I asked to come up

13  with these witnesses in 2012, but it was never addressed, and

14  it was denied, everything is denied.

15         THE COURT:  Do you have any -- just --

16         MR. GOODWINE:  I know.  That's why I'm saying it's

17  confusing --

18         THE COURT:  Let's just assume nothing else has

19  happened before now.

20         MR. GOODWINE:  Right.

21         THE COURT:  I just want to know are there witnesses -

22  -

23         MR. GOODWINE:  I would have to go there to that

24  location to see if they're still there.

25         THE COURT:  Okay.  Do you have any written statements

30

1   from any witness?

2           MR. GOODWINE:  No.  I will have to get that from the

3   police.

4           THE COURT:  I'm not saying that you have to go do

5   something or you don't.  I'm trying to find out what you have

6   because if you don't have it, then there's nothing to turn

7   over.

8           MR. GOODWINE:  Well, this type of information I asked

9   from the defendant because they're the police department, they

10  should give me that information.

11          THE COURT:  I'm not talking about the stuff that you

12  want to get from them.

13          MR. GOODWINE:  Okay.

14          THE COURT:  Right now I'm addressing things that --

15          MR. GOODWINE:  Oh, no, I have no statements.

16          THE COURT:  Okay.  Okay.  So you don't have anything

17  like that.  And do you have any documents relating to the

18  criminal case against you resulting from the arrest?

19          MR. GOODWINE:  No, sir.

20          THE COURT:  Okay.  So I think that gets through all

21  of the document requests.

22          MR. ROBERTS:  Yes, Your Honor.  Thank you.

23          THE COURT:  Okay.  Good.  Okay.  Now the last thing

24  that Judge Pohorelsky addressed in his order that I want to

25  take up is he said, Mr. Goodwine, that you could put in,

31

1   because he said you had too many requests for admissions and

2   interrogatories, he said you could have 50 requests for

3   admissions to Amtrak and then up to 25 interrogatories to each

4   of the three individual defendants but you had to serve them by

5   April 8th.  Did you do that?

6              MR. GOODWINE:  Yes, sir.

7              THE COURT:  By April 8th?

8              MR. GOODWINE:  It wasn't by the 8th.  I submitted a

9   paper for an extension and Judge Weinstein ordered the

10  defendant party to answer it by the 29th and they refused to

11  give it to me.

12             MR. ROBERTS:  Your Honor, I believe Mr. Goodwine is

13  referring to an email that he sent to us and he also filed on

14  the docket on April 8th in which he said that he needed one more

15  week to file questions.  We did not respond to that.  Frankly,

16  I did not recognize that as referring to these discovery

17  requests.  But he did not submit the additional requests for

18  admissions or the additional interrogatories until late May,

19  some five or six weeks after April 8th.

20             MR. GOODWINE:  If you look --

21             THE COURT:  Excuse me, and that's the basis for not

22  doing it you say?

23             MR. ROBERTS:  Yes, Your Honor.

24             THE COURT:  Answer them, please.

25             MR. ROBERTS:  We will.  We will.

1              THE COURT:  Can you do that by next week or is that

2    too ambitious?

3              MR. ROBERTS:  If we could have until the following

4    Monday?

5              THE COURT:  The following week is July 5th.  You want

6    to the following Monday?  Okay.  Look, I'm not trying to rush

7    things.  I want this to move forward steadily, but I don't want

8    to put unrealistic tasks on anybody.  You know, 125 separate

9    items is a lot.  Are there any within them that you anticipate

10   saying we object to doing, or have you not looked at it

11   sufficiently to do that?

12             MR. ROBERTS:  It's been a while since I've looked at

13   them.  Based on his previous request, I suspect, I anticipate

14   that there probably will be some objections.  Some questions

15   can be along the lines of do you beat your wife?

16             THE COURT:  All right.  Well, here's what I would

17   like you to do.  Go through them.  Sit down together.  Take

18   some time today before you leave the courthouse.  Sit down

19   together.  I can give you this room.  We've got rooms right off

20   the court.  Go through them and try to agree on the ones that

21   will be answered with the following principle in mind because

22   if I have to make a ruling, this is the general guideline I'm

23   going to follow.  If it is something that seeks information

24   about what happened on the day of the arrest or about

25   processing of the arrest, or about the background of the

1    individual defendants, that is relevant to it.  So for example,

2    to the extent they've been accused of excessive force, if there

3    are previous accusations of excessive force substantiated or

4    unsubstantiated.  I think all of that is fair game.  If it goes

5    beyond that, I'm unlikely to require an answer.  So I'd like

6    you to go through these outstanding requests together and try

7    to figure out what should be asked, what shouldn't.  And then

8    call up to my office.  We'll leave you a number.  And I'll come

9    back down and we'll rule on, you know, we'll have rulings on

10   what should and shouldn't be answered.  Okay?

11            MR. ROBERTS:  Very good, Your Honor.  Thank you.

12            MR. GOODWINE:  Thank you, Your Honor.

13            THE COURT:  Okay.  Now, that may speed up or at least

14   put off a little bit the next efforts.  I want to go through

15   the submission Mr. Goodwine made on June 14th at my request

16   saying, you know, tell me what's outstanding.  I think there's

17   a lot here, consistent with the principles I've already

18   described, I'm not going to order the defendant to provide.

19   But there's some I think that are worth a little more scrutiny.

20   So in terms of general policy, and that's most of the items

21   from A through S, I'm not going to order that.  Item T, picture

22   A or all pictures involved including video if it can still be

23   obtained, as to video, any video that may have been made of the

24   incident itself.  What efforts have been made, Mr. Roberts, to

25   identify either the video or videos, or the procedures that

34

1    would have governed their disposition?

2           MR. ROBERTS:  This has been an issue for a while in

3    this case --

4           THE COURT:  I know.

5           MR. ROBERTS:  -- and the Court has ordered us, and we

6    have complied with looking into this.  The request was made

7    during this litigation.  Amtrak searched and found that there

8    was no video existing of this incident.  We went back and asked

9    what was the policy.  The policy is that the surveillance

10   videos are recycled every 45 to 60 days and there was no

11   request during that period of time for the video, and that's

12   the reason that no video exists.  The Court requested us --

13          THE COURT:  Have you reduced that to some form of

14   affidavit or declaration?

15          MR. ROBERTS:  Yes.  The Court requested that and we

16   did provide affidavits.

17          THE COURT:  Okay.  You got that affidavit?

18          MR. GOODWINE:  I can't recall that, so I'm not going

19   to say I didn't.

20          THE COURT:  Okay.

21          MR. GOODWINE:  Off the top of my head, I'm not sure.

22          THE COURT:  Okay.  If you can't find it, I'm sure Mr.

23   Roberts can give you a copy of it.

24          MR. GOODWINE:  Can I ask you your views on a

25   spoilation of video because --

1            THE COURT:  You can ask.

2            MR. GOODWINE:  All right.  That's what I'm asking

3     about.  I filed a police complaint three days after this

4     arrest.

5            THE COURT:  Yes.

6            MR. GOODWINE:  And the reason why I'm asking to know

7     their policy is because I want to know if you're a police

8     officer wouldn't you say let's review the tape?  And that's why

9     I need the policy of Amtrak because I received some policies on

10    my own that says that these guys, and this Garrity warning and

11    stuff like that, this is from the Amtrak's policy that I have.

12    So I want to know was there an internal investigation?  Was

13    they asked to take a polygraph?  These are things that I want

14    to know because this is their, I mean, their policy.  So I want

15    an official copy of their policy from the defendant party so I

16    can further prepare myself for trial.

17           THE COURT:  All right.

18           MR. GOODWINE:  And I feel this is kind of prudent for

19    me to have a fair trial.

20           THE COURT:  Okay.  Mr. Roberts?

21           MR. ROBERTS:  Well, Mr. Goodwine is referring to

22    policies that he claims he's obtained on his own.  He has not

23    produced those to us, so I'm not sure what he's referring to.

24    We have in response to a discovery request produced Amtrak

25    policies to him but to my knowledge --

1          THE COURT:  Is what you produced something out of an

2   official policy statement or an affidavit describing it?

3          MR. GOODWINE:  No, it's office Amtrak police

4   procedures.

5          THE COURT:  Concerning the retention of evidence like

6   a video?

7          MR. ROBERTS:  I don't know that it addresses video

8   surveillance so that's why I'm not sure.

9          THE COURT:  To the extent it's relevant to that

10  question, you provided it?

11         MR. ROBERTS:  Yes.  To my knowledge, yes, we have.

12         THE COURT:  All right.  Well, I think that -- you

13  mentioned Garrity.  That's a very separate distinct concept.

14  Garrity is if you're a cop and your bosses want to question you

15  about an incident --

16         MR. GOODWINE:  I understand what it is.

17         THE COURT:  Okay.  Good.  Then it doesn't really

18  apply here.

19         MR. GOODWINE:  The only reason I feel it does apply

20  is because I spoke to Amtrak -- see what happens is I speak to

21  Amtrak officers, I call them directly, or I just speak to them

22  because the repertoire, and they give me the information that I

23  need because defendant party is saying they objected to over

24  200 interrogatories and stuff like that.  So I felt that I'd

25  just contact the police myself because they work for the

1    public.  And they're telling me stuff like Officer Louis, one

2    of the defendants that passed away, he wasn't supposed to

3    investigate this claim because he's involved and he wouldn't

4    have no objectivity because he was there.  And he was the chief

5    investigator.  No one else was in there.  So he could have

6    easily said let's just review the tape and busted them by

7    saying yeah, this is excessive force.  So with him being part

8    of the defendant party, it's kind of self-incriminating to say,

9    "Oh, I'm going to review --"

10            THE COURT:  I get the point.

11            MR. GOODWINE:  All right.  So --

12            THE COURT:  But I don't know -- look, I don't know if

13   Officer Louis did anything with this tape.  I don't know that a

14   tape existed.

15            MR. GOODWINE:  It did exist because again, I spoke to

16   --

17            THE COURT:  I don't know.  And you say it did.

18            MR. GOODWINE:  I spoke to Amtrak cops.

19            THE COURT:  You say you did.  Perhaps you'll get a

20   chance to prove that at trial, perhaps not because it sounds

21   like what you're offering is hearsay which isn't allowed.  If

22   you want to call a witness -- you say you've talked to these

23   people.  Well, issue a subpoena, the pro se office will help

24   you do that, to come to court and say, "Yeah, I know this tape

25   existed and I saw Officer Louis do something with it."  Hold on

1   please, sir.  That may be the only way you get it in.  I don't

2   know if that'll happen or not.  I'm not the trial judge and I'm

3   not making decisions about evidence, and I'm certainly not

4   making a decision about whether there was spoilation here.  All

5   I'm going to do, and we're going to end this part of the

6   conversation after I finish talking about this, all I'm going

7   to do is make sure that you have the information that they have

8   available and that you're entitled to to litigate.  They've

9   told you what their policies are.  Excuse me, sir.

10          MR. GOODWINE:  Okay.

11          THE COURT:  You shake your head, but they've told you

12   what it is.  That's all I can do to get them to do it.  We're

13   moving on to the next topic.

14          MR. GOODWINE:  One --

15          THE COURT:  We're moving on to the next topic.

16          MR. GOODWINE:  I know.  One quick thing.

17          THE COURT:  No, no --

18          MR. GOODWINE:  They never gave me the policy.

19          THE COURT:  -- sir, sir --

20          MR. GOODWINE:  That's what --

21          THE COURT:  Sir, stop talking, please.  I'm going to

22   ask you to respect that I've made a ruling and that we're

23   moving on to the next issue.  Do you understand that?

24          MR. GOODWINE:  I understand.

25          THE COURT:  Okay.  Good.  All right.  The next one is

1   you -- complaints against an officer involved in an allegation

2   of corruption, misconduct, and theft.  I'm not going to order

3   that in general, but to the extent that there is any allegation

4   or complaint made against any of the three officers regarding

5   false arrest, the excessive use of force, or misappropriation

6   of property, that's to be provided.

7           MR. ROBERTS:  Yes, Your Honor.

8           THE COURT:  The names of all officers that were

9   present at the arrest along with their pictures and statements.

10  What can you tell me about that?

11          MR. ROBERTS:  Your Honor, we've already provided

12  that.  All the officers' names are in the arrest report and

13  reports have been produced to the plaintiff.  We've also

14  produced photographs of those four officers.  They're all named

15  as defendants in this.  And any statements that they've created

16  have been produced.

17          THE COURT:  Okay.  Were any other officers present at

18  the arrest?  And by arrest I want to make sure we're talking

19  about from the time any officer first encountered Mr. Goodwine

20  through the point where he was essentially brought into custody

21  and taken to a holding station.

22          MR. ROBERTS:  To my knowledge, and in my discussions

23  with the clients, all of the officers are already named.

24  There's nobody who isn't named.

25          THE COURT:  And all reports, whether made by those

40

1   officers or anyone else, concerning the arrest have been

2   provided?

3                MR. ROBERTS:  Yes, Your Honor.

4                THE COURT:  Okay.  So I'm not going to order anything

5   further on that.

6                MR. GOODWINE:  Your Honor?

7                THE COURT:  Yes?

8                MR. GOODWINE:  Can I say something on that topic?

9                THE COURT:  Yes.

10               MR. GOODWINE:  I was there so I know for a fact that

11  there were more officers.

12               THE COURT:  Okay.  This again is the sort of thing

13  where I wasn't there so I don't know.  Excuse me a second.  And

14  the reason I say that is because I have to rely on each side to

15  honestly go about the business of complying with an order.  And

16  when you tell me or Mr. Roberts tells me that, "I have given

17  everything that fits within that order and there's nothing more

18  for me to give," that's the end.  If you have a basis for

19  saying, other than, "Well I know I was there," okay, that's

20  something you're going to litigate at trial.  But what more can

21  I do?  What would you have me do?

22               MR. GOODWINE:  If possible, you can -- I can probably

23  go there if I have an escort and just say this guy was there,

24  and this guy was there.  Like I know who was there.  Just --

25               THE COURT:  You show no lack of willingness or

41

1   ability to get in touch with officers.  You talked to me about

2   it yourself.

3          MR. GOODWINE:  Yeah, this is Amtrak officers, not all

4   the ones that work at Penn Station.

5          THE COURT:  Go there.

6          MR. GOODWINE:  But the problem with me going there is

7   that I'm kind of fearful of going there.  That's why I asked

8   the judge if there was a way I could get an escort or I can

9   describe the officer.  I know exactly who it is.  I can

10  describe him.

11         THE COURT:  Tell me then.

12         MR. GOODWINE:  He's a sergeant.  He has a puffy face.

13  I believe he's kind of dark skinned.  He has a heavy voice.

14  Maybe three stripes, or two stripes going down the side.  All

15  you have to really do is just look and see who worked at 7

16  o'clock, the time of arrest.  It's really not that complicated.

17         THE COURT:  Please supply the name of any sergeant on

18  duty at that time and date, 7 o'clock on was it July 11th?

19         MR. ROBERTS:  On January 11, 2010.

20         THE COURT:  January.  Okay.  Sergeant on duty, Penn

21  Station --

22         MR. GOODWINE:  Um --

23         THE COURT:  Excuse me.

24         MR. GOODWINE:  Okay.  I just don't want to be

25  stricken to say sergeant because I'm not --

42

1          THE COURT:  That's what you told me.

2          MR. GOODWINE:  That's what I'm telling you, I'm just

3   guesstimating.  I don't know sergeant.  I just know he had like

4   two or three stripes on his -- I don't know the ranks.

5          THE COURT:  Three stripes is sergeant.  Two stripes I

6   don't know.  And what was the rest of the description?

7          MR. GOODWINE:  He's kind of husky built, kind of dark

8   skin.

9          THE COURT:  And you said he had a beard?  Facial

10  hair.

11         MR. GOODWINE:  No, I didn't say that.

12         THE COURT:  Sorry?

13         MR. GOODWINE:  I didn't say that.

14         THE COURT:  Okay.  So what did you say?

15         MR. GOODWINE:  I said he had curly hair, like kind of

16  curly, because I seen him with his hat off before.

17         THE COURT:  Okay.  All right.  Just get the name of

18  any sergeant or other I guess non-commissioned officer really

19  present at 7 o'clock on that date.

20         MR. GOODWINE:  Would it be possible just to get the

21  people that worked 7 o'clock that day?  Because I'm sure --

22         THE COURT:  No, no, [inaudible].

23         MR. GOODWINE:  Okay.  Any statement of correction by

24  a police officer or admission, last one to be anything relevant

25  to the arrest, right?  Not just anything said by any officer.

43

1          MR. GOODWINE:  I didn't hear the question.

2          THE COURT:  Item W in your list, any statement of

3    correction by a police officer or admissions.  And I take it

4    that's another way of saying any statements about what

5    happened, right?

6          MR. GOODWINE:  I want to know the policy.  That way

7    we have --

8          THE COURT:  I'm not doing anything further on policy.

9          MR. GOODWINE:  Right.  You asked me my explanation of

10   what I'm trying to say here.  I'm trying to say that if we

11   litigate, I want to know what's their policy because I don't

12   want an officer to say, "Well, I didn't mean that," or --

13         THE COURT:  Okay.  No, I'm not going to do that.

14         MR. GOODWINE:  Okay.

15         THE COURT:  X, "Names of any company or person that

16   reviewed the video of my arrest with name in any statement."

17   Do you have any information that's responsive to that?

18         MR. ROBERTS:  Yes, Your Honor.  We've already

19   provided affidavits and entered them on the docket in response

20   to the Court's request.  All the parties, all the defendants

21   have not reviewed the video nor do they know of any entity that

22   has attempted to view any video.

23         THE COURT:  All right.  That's the end of that issue.

24         MR. GOODWINE:  Your Honor?

25         THE COURT:  Yes, sir.

44

1          MR. GOODWINE:  Can I speak on that issue?

2          THE COURT:  You may.

3          MR. GOODWINE:  I want to know the people that monitor

4    the cameras because they're a witness to what happened.

5          THE COURT:  All right.

6          MR. GOODWINE:  That's -- I want to --

7          THE COURT:  Now I heard you --

8          MR. GOODWINE:  Can I finish?

9          THE COURT:  Yes.

10         MR. GOODWINE:  That reason is since they monitor the

11   cameras, they probably can be called as witnesses to say, "I

12   seen the whole thing on video."

13         THE COURT:  All right.  I'm denying that request.  I

14   think that to the extent there is any relevant discoverable

15   information in item X it has been provided.  I don't think any

16   further obligation should be imposed on the defendant in

17   response to that request.

18         Y, details, if any, of the named officers being

19   subject to the following, and then there's a list of 29 items.

20   I'm not going to read them all into the record.  They're in

21   document 82 at Pages 3 to 4.  Consistent with what I said

22   before, I don't think everything in that list is discoverable

23   but item four, false arrests; item 9, unnecessary force; I'm

24   going to include deadly force because it may or may not have

25   been necessary, but any allegation of excessive force; 10,

45

1   destruction of other property, appropriated property, or

2   destruction reports or records; 11, theft; 15, assault; 23,

3   altering information on official documents.  Those are the

4   issues that generally speaking if it has anything to do with

5   the nature of the allegations of this case, they should be

6   provided.

7            MR. ROBERTS:  Yes, Your Honor.

8            THE COURT:  Okay.

9            MR. GOODWINE:  Your Honor?

10            THE COURT:  Yes, sir.

11            MR. GOODWINE:  Can we also touch bases on number 18,

12   any law violations?

13            THE COURT:  No.

14            MR. GOODWINE:  How about -- any law violations just

15   means if they have any complaints on any law violations.

16            THE COURT:  I know.  I know what it means.

17            MR. GOODWINE:  Okay.

18            THE COURT:  If somebody got -- if one of these

19   officers, you know, has a domestic complaint --

20            MR. GOODWINE:  Yes.

21            THE COURT:  -- or was jaywalking, it has nothing to

22   do with the allegations here.

23            MR. GOODWINE:  But in my --

24            THE COURT:  That's the end of that issue.

25            MR. GOODWINE:  Okay.  I can't get the handcuff issue?

46

1   Because that's in my complaint, number six.

2              THE COURT:  Anything I said, anything about the --

3              MR. GOODWINE:  You didn't mention number six.

4              THE COURT:  Mr. Goodwine, I said anything --

5              MR. GOODWINE:  Okay.

6              THE COURT:  -- going to excessive force --

7              MR. GOODWINE:  Your Honor, not to cut you --

8              THE COURT:  Number six, any handcuff issues from

9   detainee, is not necessarily excessive use of force.  Handcuffs

10  are used routinely for arrests and I'm not going to authorize

11  discovery to every time one of these officers used handcuffs.

12  Now, Mr. Goodwine, we are please moving on to item Z.

13             MR. GOODWINE:  I just want to ask you a question.

14             THE COURT:  Yes.  Is it about item Z?

15             MR. GOODWINE:  No.  It's about --

16             THE COURT:  Then let's move on to item Z, please.

17             MR. GOODWINE:  I don't want to lose it.

18             THE COURT:  Ask your question quickly, but --

19             MR. GOODWINE:  Okay.  I just don't want to lose my

20  train of thought.  My chief complaint, because I had a

21  fractured wrist from this, I mean a sprained wrist, this

22  handcuff issues.  I want to know if they have a pattern of

23  handcuff issues.  That's in my complaint.  And I feel --

24             THE COURT:  Mr. Goodwine --

25             MR. GOODWINE:  -- I feel --

47

1          THE COURT:  Mr. Goodwine --

2          MR. GOODWINE:  Okay.

3          THE COURT:  -- stop talking, please.  I've now

4  explained it three times.  I'm going to explain a fourth time

5  and this will be the last time.  I have ordered the defendant

6  to provide you with any complaints about the use of excessive

7  force.  If there is a complaint that one of these officers used

8  over-tight handcuffs, that's excessive force and that's going

9  to be provided.  If there's a report that he put handcuffs on

10  somebody because he was arrested, that has nothing to do with

11  this case and is not going to be provided.

12          Now, we're moving on to item Z.  "All named officers

13  in my arrest, medical records as their measure of force could

14  used could affect the measure of force applied in my arrest

15  including psychiatric records, substance abuse, depression and

16  so on."  I'm not going to order that.

17          MR. GOODWINE:  Your Honor, can I get a reason why?

18          THE COURT:  Because I don't think it's relevant.  I

19  don't think there's a basis for that.  If you have a reason to

20  believe, and let me give you an example about a case where an

21  officer was -- there was evidence that the officer had been

22  abusing steroids prior to the incident at issue where there was

23  an allegation of excessive force, that's something that's

24  worthy of followup.  But just to say on speculation, "Well, I'd

25  like to know if any of these guys have anything that you could

48

1   conceivably connect to a propensity for using excessive force,"

2   that's too speculative.  Sometimes people talk about a fishing

3   expedition.  You know, "Hey, there could be something out

4   there, let me try."  I'm not going to authorize that.

5           MR. GOODWINE:  Would unfitness be more on the

6   grounds?  Because I think one of the officers wasn't fit.

7   That's a health --

8           THE COURT:  All right.  I'm not going to have just

9   speculative tell me anything about the background of these

10  officers because I think that they have a propensity to engage

11  in the excessive use of force.

12          MR. GOODWINE:  I'm not going to waste your time with

13  it.  I'm just saying if the officer wasn't fit -- because I've

14  done a lot of research on this and I know in law enforcement

15  too, so the stuff that I'm saying is not just off the top of my

16  head.  If an officer's unfit, he can use more force in trying

17  to detain you not because he's trying to be overwhelming but

18  it's just because he's not fit.  And this has been document in

19  police records that this is a problem, that they are more

20  aggressive by -- and I just want to know the annual physical --

21          THE COURT:  I'm not persuaded that that is a basis

22  for ordering --

23          MR. GOODWINE:  Okay.

24          THE COURT:  -- the amount of discovery you've

25  proposed.

49

1          Then I guess we start again at A, "Policy on if

2    Officer Rinaldi was able to conduct this investigation, as

3    various Amtrak officers told me he broke policy in doing so."

4    No, I'm not going to order that.  That's a collateral issue.

5          B, and I should note for the record in case we need

6    to review this, that we're on document 82, Page 4 where the

7    itemized list stars again at letter A after having gone through

8    A through Z.  So the second series letter B now, "Identity of

9    witnesses with addresses and telephone numbers and any relevant

10   statements made."  Have you identified, Mr. Roberts, all the

11   witnesses who you anticipate calling?

12          MR. ROBERTS:  Yes, Your Honor, we've identified one

13   witness and we provided that person's identity and an affidavit

14   from that person to Mr. Goodwine.  We also anticipate that

15   we'll retain a medical expert and we're identifying that person

16   at this time.

17          THE COURT:  All right.

18          MR. GOODWINE:  Never got that.

19          THE COURT:  I'm sorry?

20          MR. GOODWINE:  Never got that.

21          THE COURT:  Never got the affidavit?

22          MR. GOODWINE:  The witness he's talking about.

23          THE COURT:  Who is that?

24          MR. ROBERTS:  It's the general counsel of Davidson

25   Design and Development.  His name I believe is George Crompton.

50

1          THE COURT:  And you never got that?

2          MR. GOODWINE:  He said he's calling him as a witness?

3          THE COURT:  Yes.

4          MR. GOODWINE:  I didn't know that.  I just know that

5  --

6          THE COURT:  Okay.  Well now you know.

7          MR. GOODWINE:  Okay.

8          THE COURT:  Okay.  "Activity log on who had access to

9  my things."  These are the items that you say were seized from

10  you?

11          MR. GOODWINE:  Yes.

12          THE COURT:  Do you have any log, evidence log about

13  that?

14          MR. ROBERTS:  No, Your Honor.  We've already provided

15  the property log and to our knowledge, that's the only document

16  that exists.

17          THE COURT:  Okay.  So it sounds like there's nothing

18  further on that.  Do you want to be heard on that?

19          MR. GOODWINE:  Yes.  Is it possible that I can just

20  get the whole policy so I can look and see what I need?

21          THE COURT:  No, no.  You're entitled -- partly

22  because we are not adding on new things.  Mr. Goodwine, please

23  listen.  We're not adding on new things.  You've had quite

24  frankly many opportunities, and more opportunities than most

25  people would have, to supplement time and again their requests

51

1   after not discharging their obligations as they should.  We're

2   not going back to the well for more.

3           MR. GOODWINE:  I'm not looking --

4           THE COURT:  I'm not asking for a response for that.

5           MR. GOODWINE:  No, it's not a response to that.  I'm

6   not looking to add more supplemental stuff.  I'm looking to

7   have their policy so I can ask quest --

8           THE COURT:  That's something new.  Mr. Goodwine, I'm

9   sorry, but you said, "I'm not asking for something new, all I'm

10  asking for is the policy."  Well --

11          MR. GOODWINE:  That's  --

12          THE COURT:  Excuse me.  You will let me finish, sir.

13  When the item is activity log and I say there's nothing more on

14  that, you say, "Okay, well you don't have that, how about the

15  policy?"  That is something new by definition.

16          We're going to take a five-minute break.  Please be

17  back here in five minutes.

18          MR. ROBERTS:  Thank you, Your Honor.

19          THE COURT:  Thank you.

20                  [Off the record.]

21          THE COURT:  There was a somewhat urgent matter I had

22  to take care of quickly.

23          Okay.  So we were up to item B I believe, "Pictures

24  where my things were stored."  Have you provided, Mr. Roberts,

25  any pictures of the area where items were taken?

52

1          MR. ROBERTS:  No, Your Honor.  We don't know such

2     pictures exist.

3          THE COURT:  Okay.  All right.  Anything further on

4     that, Mr. Goodwine?

5          MR. GOODWINE:  I ask that they can take a picture

6     because they took pictures of other things that they felt was

7     relevant for them.

8          THE COURT:  Okay.  That's something they're entitled

9     to do.  They can take pictures, but they're not obligated to

10    create something for you to use.

11         MR. GOODWINE:  Well, can I go there or have someone

12    take a picture for me?

13         THE COURT:  Well, he has a right to inspect.

14         MR. ROBERTS:  Yes, Your Honor.

15         THE COURT:  Do you want to give him access or would

16    it be easier for you to simply give a picture?

17         MR. ROBERTS:  I'll consult with the client and we'll

18    resolve it immediately.

19         THE COURT:  Okay.  You can certainly have access and

20    it may be easier for them to give you a picture.  I'm going to

21    trust that you'll work that out.

22         MR. ROBERTS:  Yes, Your Honor.

23         MR. GOODWINE:  And Your Honor?

24         THE COURT:  Yes.

25         MR. GOODWINE:  I ask if there's any modification to

1   the area that things were stored because in the policy that

2   they've given me, it doesn't comply to what I seen.  My things

3   were stored, it was just in a closet.  And their policy --

4   that's why I'd like to view the policy because I know what I

5   seen.

6              THE COURT:  Well, do you have any information about

7   that?

8              MR. ROBERTS:  I'm confused about whether he has a

9   policy or not, but --

10             MR. GOODWINE:  I have it right here.  You gave it to

11  us.

12             THE COURT:  I'm not sure that this has relevance to

13  the claim.  You know, to the extent the property is an issue,

14  I'm really not sure that it is other than as damages resulting

15  from a false arrest.  Just hear me out, please.  All right.

16  Because I know Judge Weinstein significantly limited the claims

17  that are going forward.  And there's some -- and I read the

18  transcript of your appearance before Judge Pohorelsky which

19  gave me some question about whether in addition to a claim for

20  false arrest and excessive force, there's also a claim for a

21  fourth amended violation and the deprivation of property.

22  There may be -- I'm not the one who makes that decision.  But

23  if there is, it's not a matter of negligently storing

24  something.  They shouldn't have taken something from you

25  without due process or without reasonable cause under the

54

1    Fourth Amendment.  There may be due process.  But if they were

2    simply negligent in storing something and it was lost as a

3    result of that, that's not a constitutional claim in any event.

4    So I don't know that for the claims that you get to litigate

5    that are still going forward that the condition of the storing

6    area is going to be of any relevance.  If there is some way to

7    say you're entitled to be compensated for harm that you

8    suffered because property seized from you during your arrest

9    was lost, that would flow from the fact that you shouldn't have

10   been arrested if that's true.  But I also want to make sure you

11   understand, as I read the transcript of Judge Weinstein's

12   statements, he doesn't think that that was something you can

13   get compensation for.  All of which, I'm almost done, all of

14   which is a way of saying that I don't want you to get your

15   hopes up about what the results of any of this are with respect

16   to the property area and it's also a way of saying that I'm not

17   going to go too far afield in ordering discovery about the

18   conditions of the storage.

19           MR. GOODWINE:  Your Honor, I know -- with the

20   property issue, Judge Weinstein made a ruling because he didn't

21   have all the facts.  Actually, defendant didn't produce the

22   complaint that I filed in 2010 until after we had the hearing

23   like we're having now with Judge Weinstein where I can show him

24   like that was actually in my complaint.  So he's thinking like

25   you're not going to add no new stuff and I'm saying I don't

55

1  think he was understanding that no, I'm not adding new stuff,

2  this was initially in my complaint.

3         THE COURT:  I think we're talking past each other a

4  little bit.  You may be right that Judge Weinstein didn't have

5  all the facts.  He's a very sharp guy, so I sort of doubt that.

6         MR. GOODWINE:  Yes.

7         THE COURT:  But in a very important respect it

8  doesn't matter.  If you're saying they stole my property --

9         MR. GOODWINE:  That's what I'm saying.

10         THE COURT:  Right.  Okay.  That's one thing.  Right?

11  But that has nothing to do with how well it was stored once

12  they took it from you.  If what happened was that they properly

13  took items from you as part of the arrest and then as a result

14  of some sort of negligence because of how they maintained the

15  storage area it was lost or stolen by somebody else, that's not

16  a violation of your constitutional rights and it's not a claim

17  that is going to trial.  If you say that, you know, "They just

18  took my stuff, that was an intentional act, it wasn't any kind

19  of negligence, they just took it from me by virtue of their

20  being cops and they used their authority as cops to take

21  something from me," that's a constitutional claim.  But that's

22  not something that you're going to learn anything more about by

23  looking at how secure the storage area is.

24         MR. GOODWINE:  Okay.

25         THE COURT:  E -- and just to be clear about item D,

1    it sounds like on consent there will either be a photograph or

2    Mr. Goodwine will have access on his own to examine the current

3    state of the storage area.  I am not going to order discovery

4    into what has happened to the storage area in the years since

5    the incident.

6              MR. GOODWINE:  Just to speak on that, I just want to

7    know because of who had access to this, like anybody who just

8    went in and took it, that they modified it and was my theft the

9    reason or cause that it was modified.

10             THE COURT:  I'm not going to order that discovery.

11             MR. GOODWINE:  Okay.

12             THE COURT:  E, "Any changes made to the area."

13   That's the thing you just asked about.  No, I'm not going to

14   order that.

15             MR. GOODWINE:  E?  Which E are you reading?  Any

16   polygraph examination?

17             THE COURT:  No.

18             MR. GOODWINE:  That's the E you're talking about?

19             THE COURT:  No.

20             MR. GOODWINE:  No, I'm saying is that the E?  Because

21   --

22             THE COURT:  No, it is not.  You've asked me three

23   times now and I've said no.  I hope you'll believe me this

24   time.  It's not.  I'm on Page 4 of your letter.

25             MR. GOODWINE:  Oh, okay.

1              THE COURT:  E, any changes made to the area.  That's

2    the item we had just discussed and the answer is no, I'm not

3    going to order that.

4              F, "List all the people that had access to this

5    closet."  No, I'm not going to order that.

6              MR. GOODWINE:  Can I speak on that?

7              THE COURT:  No.  We are going much more slowly

8    through all of this than we should.

9              MR. GOODWINE:  I'll make it quick.

10             THE COURT:  No.  Sir, please respect when I make a

11   ruling because we've thoroughly discussed the extent to which

12   this is a general issue as to which there should be discovery.

13   So I'm announcing my rulings on this.

14             G, "What witnesses he questioned."  I take it that's

15   related to F, the people who had access, correct?

16             MR. GOODWINE:  This is, actually all this is

17   referring to Officer Louis, this whole A through H because I

18   wanted to know the policy on it, who did Officer Louis question

19   about access, who did Officer Louis question as it pertained to

20   the witnesses.

21             THE COURT:  Well, let me ask Mr. Roberts, have you

22   provided all of Officer Rinaldi's reports?

23             MR. ROBERTS:  Yes, we have, and all the background

24   documents related to that report.

25             THE COURT:  Okay.  So you have the information

58

1   available about the investigation he did and he's no longer

2   available to question, so the answer to G is it's moot because

3   there's nothing further to give.

4           H, "All changes of any Amtrak policy from 2010 to

5   2013."  The answer is no, I'm not going to do that.  Now

6   there's a new list --

7           MR. GOODWINE:  Can I speak on that?

8           THE COURT:  No.  Please, I'd like to get through

9   this.  Now we're on Page 5 and there's a new list that starts

10  with the letter A.  "Amtrak procedure and obligation when

11  dealing in appearing in the normal course of their duties."  I

12  don't even understand what that's for.  Can you explain?

13          MR. GOODWINE:  Amtrak procedures and obligations when

14  dealing in the normal course, that's basically asking what are

15  the policies and procedures.  I need policies and procedures.

16          THE COURT:  No, this is not about policies and

17  procedures.  This is about the actions of the officers at the

18  time of your arrest, so I'm not going to order that.

19          B, "When an officer can file for a protective

20  pertaining their job capacity."  Is that another policy based

21  question?

22          MR. GOODWINE:  No.  I want to know officers, when

23  they arrest someone, they can't really hide behind a protective

24  order because how would I be able to question them?  From my

25  understanding, police are not protected by confidentiality.

59

1          THE COURT:  Okay.  There's not a -- that's asking a

2     legal question really.  I'm really giving discovery on factual

3     matters.

4          C, so --

5          MR. GOODWINE:  I don't understand.

6          THE COURT:  Excuse me, sir, I'm moving on to the next

7     one.

8          MR. GOODWINE:  I didn't understand you, that's all.

9          THE COURT:  I'm sorry.  I'm saying no, I'm not

10     providing that.

11          C, "When cases is to be passed to DA or DOJ,

12     including who."  I'm assuming that's who authorized it.  No.

13     I'm restricting discovery to the incidents, the events at issue

14     here.

15          MR. GOODWINE:  Can I speak on that one?

16          THE COURT:  Yes.

17          MR. GOODWINE:  It is Amtrak's policy to, from my

18     understanding, to pass these cases off to the Department of

19     Justice so that there won't be any type of corruption in in-

20     house, just in-house investigation.  They're supposed to just

21     let it go around so that there can be fresh eyes on it.

22          THE COURT:  All right.  The answer remains the same.

23     I'm not providing that.

24          MR. GOODWINE:  Okay.

25          THE COURT:  B, "A copy of all DOJ paper if a report

1   was filed pertaining to my arrest." You can take that up with

2   the Justice Department if you want to subpoena them, but Amtrak

3   is not responsible for what DOJ maintains.

4           MR. GOODWINE: Even if it's Amtrak's policy --

5           THE COURT: Mr. Goodwine, you have a habit of

6   questioning every ruling I've made to date. I'm going to ask

7   you to stop.

8           E, "Any unusual occurrence reports." Have you

9   provided, Mr. Roberts, all reports about this incident?

10          MR. ROBERTS: Yes, Your Honor.

11          THE COURT: To the extent unusual occurrence reports

12  includes something about other topics, the request is denied.

13  To the extent it includes anything about this incident, it's

14  granted but it has been complied with.

15          F, "When allegation of unnecessary force is made by

16  officer involved in arrest." You're seeking prior complaints

17  about these officers' use of unnecessary force?

18          MR. GOODWINE: Let me read the question because I'm a

19  little bit slow.

20          THE COURT: Item F on Page 5.

21          MR. GOODWINE: Yes.

22          THE COURT: Okay. That's already been ordered as

23  part of the discovery. It repeats something that we've already

24  addressed.

25          G, "Investigation steps processed when a serious

1   injury or any complaint suffered by police in their custody,

2   investigation process when a theft occurred by officer."  To

3   the extent this is seeking policy and procedures, the request

4   is denied.  To the extent it's seeking complaints about the

5   three defendant officers having been accused of unnecessarily

6   causing somebody injury or accusing them of theft, I've already

7   granted that.

8          H, "Guidelines for the use of photographic video

9   equipment when complaint is filed within the time line before

10  the video is recycled."  I think you've already gotten the

11  information responsive to that to the extent they have it and

12  I'm not going to order anything further.

13         I, "Standard evidence collection including how it was

14  applied and what attempts were made including name and rank of

15  person."  That's denied.  It goes beyond the events at issue in

16  this case.

17         J, "Procedures of storage of images, video, and how

18  it was applied in my arrest and what attempts were made

19  including names and rank of person."  To the extent it goes

20  beyond discovery I've already ordered, that's denied.

21         K, "Durations, procedures of maintained photographs,

22  video recordings prepared in connection with the complaint

23  video and how it was applied in my arrest and what attempts

24  were made including names and rank of person."  To the extent

25  it goes beyond my previous rulings, it's denied.

1           "Synopsis of Officer Louis including who oversaw his

2    investigation."  We've already established that you've gotten,

3    Mr. Goodwine, all of the reports by Officer Rinaldi.  Are there

4    any supervisory reports relating to Officer Rinaldi's work on

5    this case?

6           MR. ROBERTS:  They've been provided.  I think what

7    might be covered is some correspondence, internal

8    correspondence within Amtrak regarding Officer Rinaldi's

9    findings and that's been provided.

10          THE COURT:  Okay.  You've gotten the internal

11   findings, Mr. Goodwine?

12          MR. GOODWINE:  I don't understand you.

13          THE COURT:  He said in addition to Officer Rinaldi's

14   reports you've gotten some internal communications about his

15   work.  Have you gotten that?

16          MR. GOODWINE:  Not from a supervisor.  I want to know

17   --

18          THE COURT:  Have you gotten -- whether it's from a

19   supervisor --

20          MR. GOODWINE:  I received something but I don't

21   understand.

22          THE COURT:  Okay.  Well, to some extent I'm trying to

23   be responsive to you as best I can.  But ultimately it's not

24   something I can take responsibility for for making sure that

25   you understand.  I'm trying to be as transparent as I can about

63

1   it.

2           MR. GOODWINE:  Well, how about I explain the

3   question?

4           THE COURT:  Okay.

5           MR. GOODWINE:  I just want to know who -- like you

6   have a boss.  Someone has to look over your cases.

7           THE COURT:  I have so many bosses you wouldn't

8   believe.

9           MR. GOODWINE:  So I just want to know that someone

10  looked over Mr. Louis' investigation because I feel it wasn't

11  done correctly.  So I want to know who else besides him --

12  who's higher than him.

13          THE COURT:  The issue in this case is not whether

14  Officer Rinaldi conducted an investigation properly.  The issue

15  in this case is whether the three living defendants or those

16  three acting in concert with Officer Rinaldi violated your

17  rights by arresting you without probable cause or using

18  excessive force in connection with that arrest.

19          MR. GOODWINE:  Okay.

20          THE COURT:  I'm not opening up discovery into the

21  quality of Officer Rinaldi's work in doing any further

22  investigation.

23          All right.  Now we're up to Page 6 and you have items

24  A through E under the heading hospital.  And these are all

25  things that go to -- well, records relating to hospitalization.

64

1  You were hospitalized, correct?

2          MR. GOODWINE:  Excuse me?

3          THE COURT:  You were hospitalized you said?

4          MR. GOODWINE:  Yes, sir.

5          THE COURT:  Okay.  Does Amtrak have any records

6  related to the hospitalization?

7          MR. ROBERTS:  Yes, Your Honor, and we provided those.

8          THE COURT:  Okay.  Is there anything left related to

9  the hospitalization of Mr. Goodwine that you haven't provided?

10         MR. ROBERTS:  No, Your Honor.

11         THE COURT:  Okay.  Is there anything other than

12  policy issues which you have in item E?  And I'm not going to

13  provide policy on hospitalized prisoners.  Is there anything

14  you think that you need relating to records about your

15  hospitalization?

16         MR. GOODWINE:  Yeah.  I never received, since I was a

17  prisoner, I never received the paperwork from the doctor I

18  don't believe, so I'd like to have that.

19         THE COURT:  Well, they say they've given you

20  everything they have about your hospitalization.

21         MR. GOODWINE:  I mean, like you said, they're

22  claiming that's what they gave me, what they had.

23         THE COURT:  Right.

24         MR. GOODWINE:  I have to accept it.

25         THE COURT:  Okay.

65

1          MR. GOODWINE:  Now, this is a question and this is a

2    question to prove my defense.  The officer is claiming that I'm

3    such a violent person and resisting arrest, yet he leaves me in

4    the room with a female doctor.  So I want to know their policy,

5    but I know you're not going to do the policy thing.

6          THE COURT:  All right.

7          MR. GOODWINE:  But this is --

8          THE COURT:  May I make a suggestion?

9          MR. GOODWINE:  Yes.

10         THE COURT:  If there's something that you can figure

11   out from the hour and a half or close to two hours we've been

12   together that I'm not going to give, I think it's just going to

13   be a waste of our time for you to say, "I'd like it but I know

14   you're not going to give it."

15         MR. GOODWINE:  But I'm just trying to show you how I

16   feel I'm not getting a fair trial because if this officer is

17   making all these claims against me, I can easily say, "Well,

18   why did you leave me in the room with this lady, you're

19   claiming that I'm a threat, un-handcuffed?"  So I'm just trying

20   to show that what he's saying is a lie.  Why don't they just

21   take a polygraph?  That would prove everything.

22         THE COURT:  Okay.  You know, you talk about your

23   defense.  You're not on the defense here.  You've come to this

24   Court saying, "Those people did something wrong and I want them

25   to pay me for it."  You're the plaintiff.

1          MR. GOODWINE:  Okay.

2          THE COURT:  You have something to prove, but you

3    don't have anything to defend.

4          MR. GOODWINE:  But I have to defend my name because

5    he's coming up with a criminal past on me that I asked to be

6    precluded and I feel that's prejudice because now that's going

7    to -- I know I can't say he's manipula -- that's going to

8    manipulate the jury by thinking oh this guy has a history.  I

9    feel that that should be precluded.

10         THE COURT:  All right.  That's not an issue before me

11   now.  Let's move on to the bottom part of Page 6, "Any and all

12   relation Amtrak has with Lowe's or North Shore Hospital."

13   We've already addressed that.  There's none.

14         Now it's one of two items on the page listed as

15   request number 94, the first one, "Any mailing issues raised in

16   court by plaintiff, by Amtrak, or Arseneault Whipple Fassett &

17   Azzarello, LLP from wrong address or any mail issues."  I'm not

18   going to have discovery about the conduct of this litigation.

19   It's not relevant to the claims at issue, so --

20         MR. GOODWINE:  Can I just speak on that real quick?

21         THE COURT:  No.  I'm moving on to the next one.

22   Request number 86, "Copies of any illegal or legal surveillance

23   on me by Amtrak police or their peers with names and address

24   and personnel that ordered it as it pertains to my complaint."

25   Has there been any surveillance prior to the arrest?

67

1              MR. ROBERTS:  No, Your Honor.

2              THE COURT:  Okay.  Has there been any surveillance

3     since the arrest of Mr. Goodwine?

4              MR. ROBERTS:  No, Your Honor.

5              THE COURT:  Okay.  That's the answer to that.

6              MR. GOODWINE:  Okay.

7              THE COURT:  94, oh simply a second copy of the same

8     one I read earlier about mailing issues.  As I said, I'm not

9     going to order discovery into the litigation of this case.  And

10    I should explain that it's not the kind of discovery that's

11    permitted under the law.

12             MR. GOODWINE:  Your Honor --

13             THE COURT:  I didn't want to hear discussion on it

14    before and I don't want to hear discussion on it now.

15             MR. GOODWINE:  It's not discussion on this.  It's

16    something relevant but it's not this question.  My case was

17    transferred from the state to this court --

18             THE COURT:  Yes, it's removed, yes.

19             MR. GOODWINE:  -- based on them mailing me the

20    address that the police wrote down.  I never responded to that

21    because I never received the mail.  I just want to know if this

22    is a pattern because the only reason I found out that my court

23    case was moved here is when I went to state court, I have the

24    paper with me, on --

25             THE COURT:  It has zero, literally nothing to do with

68

1  the issues that are on trial and it is not a proper area for

2  discovery.  So I am not going to order discovery to that.

3          MR. GOODWINE:  All right.  So that will just have to

4  be something that I have to take care of on a different level

5  against Whipple, this firm?

6          THE COURT:  Frankly, no.  I don't think it is worth

7  your time, but that's an issue for you --

8          MR. GOODWINE:  It's principle.

9          THE COURT:  You can --

10          MR. GOODWINE:  Okay.

11          THE COURT:  -- do what you want in terms of

12  vindicating rights that you perceive you have, but I hope I can

13  give you some assurance.

14          MR. GOODWINE:  All right.

15          THE COURT:  I don't think that you're going to listen

16  to me because you're not satisfied with some of the other

17  rulings that I've made it seems, but --

18          MR. GOODWINE:  No, I'm --

19          THE COURT:  -- but I want you to understand, if you

20  will listen, that -- because I've seen this come up in some of

21  the other transcripts.  The kind of issue you're talking about

22  there, you only found out about it a certain way, sometimes

23  mistakes happen, but it doesn't -- it has nothing to do with

24  your rights here.  They have a right, because of the nature of

25  the case, to say, "Instead of going forward in state court,

1  we're going forward in federal court."  It's a right that they

2  have.  It's really unfortunate if you're not satisfied with the

3  way you found out about that, but finding out about it in a

4  different way would not have affected anything.

5       MR. GOODWINE:  It would because I could have

6  responded to it by saying I didn't want the court to be

7  changed.

8       THE COURT:  But you wouldn't have -- that's what I'm

9  trying to explain.  This is something the law gives certain

10  defendants the right to simply say, "Instead of state court,

11  we're going to federal court," and the plaintiff doesn't get to

12  say, "Well, I'd rather do it another way."

13       MR. GOODWINE:  Okay.  I thought --

14       THE COURT:  That's the point.  It doesn't matter

15  whether you found out about it in time or not.  You could have

16  objected but --

17       MR. GOODWINE:  Yes.

18       THE COURT:  -- but this is the kind of case that does

19  get to go forward in federal court.

20       MR. GOODWINE:  Okay.

21       THE COURT:  So that's why I say it doesn't matter

22  ultimately other than the extent to which it makes you feel

23  dissatisfied about the process, and I understand that.

24       MR. GOODWINE:  All right.

25       THE COURT:  Okay.  And the same thing, number 68,

70

1    "Request documents on what federal law states Amtrak has the

2    right to move the case as explained by John J. Roberts and

3    notice of removal from state to federal."  It sets forth in

4    that notice.

5             MR. GOODWINE:  All right.

6             THE COURT:  Okay?  Copies of -- and this is an

7    unnumbered item, "Copies of any unauthorized documents obtained

8    on me after the process of this arrest including the name of

9    who authorized it related."  I don't quite understand.

10            MR. GOODWINE:  What I'm trying to say here is I

11   notice in their police reports they're claiming that they ran

12   certain information but Mr. Roberts has produced an FBI

13   background check on me or something similar to that just

14   recently.  So I want to know that -- I didn't authorize that

15   and that will be just one document referring to --

16            THE COURT:  Okay.  One thing I hope I can convey to

17   you is the point of the discovery process is to give both sides

18   a fair opportunity to know what to expect at trial and to be

19   able to prepare for it.  The trial is going to be about what

20   happened on the day of your arrest.  It's not going to be about

21   whether he's got an FBI document about it or whether -- he may

22   or may not, and I'm not going to spend time on it because it

23   has nothing to do with the trial that's going to go forward.

24   Okay?

25            MR. GOODWINE:  I just want to know --

71

1          THE COURT:  That's the end of --

2          MR. GOODWINE:  -- would it be used at the trial?

3          THE COURT:  It will not.

4          MR. GOODWINE:  So it's precluded?

5          THE COURT:  Do you anticipate using any document of

6  that nature, Mr. Roberts?

7          MR. ROBERTS:  Only if Mr. Goodwine states that he is

8  a peaceful person who wouldn't resist arrest.  That was the

9  reason that we might bring up a criminal record.

10         THE COURT:  I very much doubt you're going to be able

11 to use a criminal record even in that situation.  I suspect

12 you'll know better than to try.  But if it is a document that

13 you anticipate using in impeachment, give it to him.  Have you

14 done so?

15         MR. ROBERTS:  Yes, Your Honor.

16         THE COURT:  Okay.  Then that's it.

17         MR. GOODWINE:  Your Honor, I precluded this from

18 2012.  Why would he just produce this just -- he just did this

19 within the last few weeks.

20         THE COURT:  It doesn't matter.  You --

21         MR. GOODWINE:  So --

22         THE COURT:  Stop.  You have the right to notice of

23 what they may try to use.  Now maybe it's silly for him to try

24 to use it, maybe it's not.  I don't know.  I'm not making these

25 decisions.  But now you know.  You don't get discovery into

72

1   where he got it.

2           MR. GOODWINE:  All right.  Here's the thing, and I

3   know you don't want to -- how did he obtain this information?

4   Because I can't obtain this information on the cops.  I can't

5   just go on the computer and say well, let me do a background

6   check on them and use it.  But he --

7           THE COURT:  It's something that you will have to

8   continue wondering about because it's not an issue for this

9   Court to decide.

10          MR. GOODWINE:  So, so --

11          THE COURT:  So we are moving on to the next item.

12          MR. GOODWINE:  I --

13          THE COURT:  Period, end.  "Names of all

14  investigators involved in this case."  You mean in your arrest

15  or in subsequent litigation?

16          MR. GOODWINE:  Names of -- I'm just confused now

17  because --

18          THE COURT:  All right.  To the extent, and I

19  understand there's a lot of things here, you may not remember

20  what you had in mind.  To the extent that you're asking for the

21  names of all investigators involved in your arrest, you already

22  have that.  To the extent you're asking for the names of people

23  that they employed to investigate the claim that you have made

24  against them, I'm denying it.

25          Next item is, "Names of anyone or agency where U.S.

73

1    Magistrate Judge Weinstein, the Court, and I can get a copy of

2    this video and when was the last possible date this could have

3    been obtained."  You're talking about the video of your arrest?

4            MR. GOODWINE:  Yes.

5            THE COURT:  Okay.  I think we've already covered the

6    extent to which information is available about that.  We're not

7    going into it further.  That's the last item on your list.

8            MR. GOODWINE:  So if there was a different agency

9    that had a copy of this and they knew this, can they just say

10   for the record there's no other -- I mean I'll be satisfied

11   with that if they say there's other video existence to our

12   knowledge, period.

13           THE COURT:  Can you say that?

14           MR. ROBERTS:  Yes, we can.  There is no other video.

15           MR. GOODWINE:  Satisfied.

16           THE COURT:  Good.  I'm glad you're satisfied.  All

17   right.  Now I'm going to turn to items we haven't yet gotten to

18   in the letter dated June 18th from the defendant, docket number

19   84.

20           MR. ROBERTS:  Your Honor, if we're going to discuss

21   number five on Page 3 --

22           THE COURT:  Yes.

23           MR. ROBERTS:  -- I think we can withdraw all of

24   those.

25           THE COURT:  Good.  That's an excellent idea.

74

1          MR. GOODWINE:  I didn't understand what happened just

2   now.

3          THE COURT:  There were some other things that the

4   defendant had asked you to produce when you were deposed.

5          MR. GOODWINE:  Uh-huh.

6          THE COURT:  And in their letter they had listed them

7   saying, "We still think Mr. Goodwine should produce them."  So

8   I was going to start going through those item by item but Mr.

9   Roberts says he's not going to ask you for those items anymore.

10          MR. GOODWINE:  Can I just view it real quick what

11   he's talking about so I can just I can have a quick --

12          THE COURT:  Sure.

13          MR. GOODWINE:  I could see that real quick?

14          THE COURT:  Yes.

15          MR. ROBERTS:  I should say that one item on there is

16   the train ticket, and Your Honor has already discussed that.

17          THE COURT:  But that's already covered.

18          MR. ROBERTS:  Yes.

19          THE COURT:  Okay.

20          MR. ROBERTS:  But anything else that we haven't

21   talked about we'll waive requesting that.

22          THE COURT:  Okay.  So I think that that covers all of

23   the outstanding discovery items that are at issue.  I said, Mr.

24   Goodwine, I would give you a chance to raise items on your

25   agenda.  I hope it will be brief because I can't imagine

1  there's anything relevant to discovery that we have yet to

2  address, but go ahead, please.

3         MR. GOODWINE:  We haven't addressed the discovery at

4  issue from February 11.  I never got that.  But they imbedded

5  it in the protective order.  Now --

6         THE COURT:  Judge Pohorelsky ruled on things that

7  were outstanding then.

8         MR. GOODWINE:  No, he didn't.

9         THE COURT:  I'm not revisiting -- sir, I'm not

10 revisiting.  I've read the transcript.  Judge Pohorelsky denied

11 all the motions ending then with N and said going forward this

12 is what you have to do.  So things that predate the March

13 conference before Judge Pohorelsky I view as having been

14 resolved.  To the extent that you are asking for further relief

15 on those issues, I'm denying it.

16        I think we have thoroughly covered what you want in

17 discovery, and frankly, one of the reasons that I asked for the

18 submission that you made on June 14 to say regardless of

19 everything that's gone forth, just tell me what's still at

20 issue.  List it for me.  We've gone through it.  I can't

21 imagine anything that you think you're entitled to that we have

22 to address today.  Give me a specific.  Don't tell me about a

23 motion you previous made.  A specific item of discovery that

24 you think is still outstanding.

25        MR. GOODWINE:  All right.  Hold on.  The main thing -

76

1    - if you give me a full minutes to read some of these papers.

2              THE COURT:  Yes.

3                    [Pause in proceedings.]

4              MR. GOODWINE:  I want to know the policy, or the

5    Court's policy on unanswered admissions.

6              THE COURT:  Okay.

7              MR. GOODWINE:  Rule 30 --

8              THE COURT:  Discovery is not about --

9              MR. GOODWINE:  Can I finish?

10             THE COURT:  Yes.

11             MR. GOODWINE:  Rule 36 says that if a party fails to

12   answer within a certain time, that admission is taken as true.

13             THE COURT:  Okay.  There I think it's important to

14   stop you and make something clear.  There are certain rules

15   that impose deadlines and that set potential consequences for

16   missing deadlines.  If you want -- and I'll tell you that a lot

17   of the time parties say, "Look, you missed a deadline, I missed

18   a deadline, we're not going to worry about it.  We're just

19   going to make sure that each side has what they need to prepare

20   for trial."  I really encourage that.  Life is short and the

21   world is round.  But if you want to insist on deadlines and

22   imposing sanctions for missing the deadline, I'll consider

23   that.  But I hope you will consider the possibility that if

24   that's the way you want to proceed, you are in much greater

25   danger of having sanctions imposed on you for missing your own

1  deadlines that would deprive you of the discovery we've been

2  talking about today.  So tell me how you want to proceed.

3         MR. GOODWINE:  I don't think you understand me.  Let

4  me briefly explain.  I filed -- see, when you say on -- I don't

5  speak the lawyer talks and all that, so I'll just break it down

6  so you can understand.  I read the law that you have posted,

7  the federal procedures, and it says to do certain things.  I

8  abided by all these rules as far as submitting the paperwork

9  that I needed to submit as far as --

10        THE COURT:  You've already established --

11        MR. GOODWINE:  Can I finish?

12        THE COURT:  Yes.

13        MR. GOODWINE:  Because you make me lose my train of

14  thought.

15        THE COURT:  I'm sorry.  Please go ahead.  You're

16  right.

17        MR. GOODWINE:  I get distracted when you do that.  So

18  when I filed all these admissions, I'm under the impression

19  that I'm going to get it back within 30 days.  Now, what the

20  defendant party has done, and I'm not a lawyer and I'm not the

21  smartest person in the room, but I can understand certain

22  things.  I'm not lawyer savvy but I know what it is.

23        I filed, as an example, a request of admission in

24  January of 2013 and I filed some in December.  What defendant

25  party has did, and this was the other lawyer, Ms. Ada Nunez,

1  she told me that, "We're objecting to every question in the

2  paper, we're objecting to every question that you answered.

3  Maybe you should rephrase your question."  So I rephrased my

4  question to the point that it seems excessive just because she

5  told me that she objected to every question.  So now when I

6  filed for more admissions and she's claiming, "Oh, we got to

7  file a protective order because he's being excessive with it,"

8  I feel that's messed up because not only did they not know to

9  file a protective order, Judge Porosky [sic] was the one that

10  suggested that they file the protective order.  So I find that

11  that was prejudice and that was my reasons for having her

12  recused.

13         Now, my reasons for having her recused was because I

14  felt he was prejudiced, I felt that he was biased.  I feel that

15  I needed to know his relationship with Amtrak and police and

16  all this stuff because I do my own research and I seen that he

17  was a lawyer at Gold and Wichen [Ph.], and I see that there's a

18  Dowling that works there.  I don't know if there's any relation

19  to the CEO, Michael Dowling, from Lowe's -- I mean from North

20  Shore Hospital where those papers from Amtrak were stolen, like

21  there's some funny stuff going on.  So this is the reason why I

22  asked for certain things because I find that sometimes there

23  are hidden relationships.  So I just wanted to know -- and he

24  refused to answer that question.  I said, "Well, do you have

25  any relationship to Amtrak or North Shore?" and he said, "I'm

1    not going to answer that, I'm not going to answer that." But

2    the reason I asked is because I see a Dowling that works at the

3    firm that she used to work there, or he was a partner in.  And

4    Michael Dowling is the CEO of North Shore Hospital.  And that

5    was when the papers that were stolen by the police.

6              So I'm saying well, to make a long story short, why

7    don't we just have the police take a polygraph.  If they're

8    telling the truth, which they're claiming that they were doing,

9    take a polygraph.  A polygraph will just vindicate you if you

10   feel that's the truth.  If you're claiming that I didn't

11   request to see your video, why didn't you request to see the

12   video?  I requested the video.  But you're a cop.  I'm accusing

13   you.  If you can't clear your own name as a cop by saying,

14   "Well, we didn't do this.  Let's get a video, let's get the

15   video."  He knew within three days that there was a video that

16   can easily say oh we didn't do it.  Why didn't you do that?

17   You have criminology background.  Why did you fail to do that?

18   And this is why I need the policy which you're not giving me.

19   But this is why I needed the policy so when I go to the jury I

20   could say here's the policy.  They were supposed to review the

21   video, they were supposed to do this, they were supposed to do

22   that.  I can't point to nothing because you're not going to let

23   me, you're not allowing me to do that.  This is how I need to

24   win it by showing the facts that they had [inaudible].  This is

25   not the facts that I'm making up.  These are their facts.  I

80

1   need to present this to them saying, to the jury, "Look right

2   there, they were supposed to review the video, they were

3   supposed to have Internal Affairs investigate them, or they

4   were supposed to take a polygraph and this is Amtrak's policy."

5   So if I can't show this to the jury, how am I going to get a

6   fair way to let the jury know that they didn't do the right

7   thing on their part.  That's called failure to train and that

8   is in my amended complaint as part of my suit.

9           And what happens is when you're saying Judge

10  Weinstein limit things, he actually did on the 14th, but after

11  that, after he gave me the names of the officers and the

12  pictures, I opened that parameter and I never seen Judge

13  Weinstein until when he recused himself from the case.  So I

14  feel that that amended complaint is more broader, is more

15  detailed and that's what I was asking for from the beginning.

16  So I feel like when you all shut me down with certain things,

17  you need to go by the amended complaint.  You can't just go by

18  oh from 2012 because that's not fair.  And if you're not going

19  to do it the fair way, I'd rather let's just start the case in

20  a whole new federal courthouse or something, maybe transfer it

21  to Manhattan.  Let it be fresh eyes, period.  And let them

22  start reading it from scratch because I need those policies in

23  order to proceed.

24          If I can't get those policies, I can't win because

25  they have all the control.  They have the video.  They claim

1  they don't have it.  I need to know if they followed procedure

2  and gave it to the Department of Justice.  I read that Amtrak

3  is supposed to give it to the Department of Justice.  I spoke

4  to officers that you can identify all witnesses if they save

5  the video.  They didn't save the video.  If you was a cop,

6  wouldn't you say, "Well, I'm innocent, let's look at the

7  video"?  I'm saying, "You're guilty, let's look at the video,"

8  and you're saying, "Oh, we don't have the video, it recycled in

9  30, 60 days," but I filed the complaint in three days.  Three

10  days you knew that we can easily go to the video and establish

11  this.  And if that's part of your policy to say, "Well, this

12  Amtrak's policy.  Since this guy has a complaint, let's review

13  the tape.  That's the procedure that we're supposed to do."

14  And if I can't prove that to the jury, how can I prove my case?

15  I'm trying to prove not only did they commit the crime that I'm

16  saying they did of excessive force and stole my things, I'm

17  proving that they hindered and obstructed justice by not

18  looking at the tape.  That's for spoilation because that

19  evidence was more damaging to them than me.  And I'm willing to

20  take a polygraph test.  Why wouldn't they take one?  The

21  Garrity thing says that they could.  I'm getting all this

22  information through cops.  I have weapons ideas that police, NY

23  police -- I mean you may say oh this guy has a criminal

24  background.  I was young.  That's Y/O status and I didn't even

25  do that.  If I know what I know about the law, I could have

82

1    beat that case myself by defending myself.

2            So that's irrelevant, but I feel that it's prejudiced

3    and kind of racist that the Court will allow them to use that

4    after I asked to have it precluded.  And why would he do it so

5    late after the judges re -- well, one of them recuted [sic] the

6    other?  Why would he wait so late?  He's just trying to like --

7    I don't want to call him a name, but it's -- the only word I

8    can use is manipulative, so I'm not calling him manipulative.

9    It's just manipulating and altering the whole case, and I feel

10   it's not right.  And that was my major grounds of asking Judge

11   Porosky [sic] to be recuted [sic] and he refused to do it.  But

12   I'm reading all the rules that whoa, whoa, whoa, you have to

13   recute [sic] yourself.  Or not only do you have to recute [sic]

14   yourself, you don't have to, but you're not the boss.  There's

15   somebody else has to make that decision.  He's saying he's not

16   going to do it, he's not going to do it.  But you're abiding by

17   upholding everything that he has stamped approval.  But

18   everything that he's stamped approval should be voided because

19   I had him recuted [sic].  So this is supposed to be fresh.

20   This is supposed to be from scratch.  But if you're not going

21   to do that based on the prejudice that I faced through him,

22   that's not fair.

23           And also, we didn't even go through the motions from

24   2012.  Even though I don't agree with all your rulings, it's

25   still fair in a sense that we went through each one.  But Judge

1   Porosky [sic], he didn't go through none of them.  He just said

2   all of them denied.  And the only reason he denied all of them

3   is because I had to mention it to him and say, "What about my

4   motions from 2012?  Are we going to go through those?"  "Oh,

5   they're all denied."  And I'm slow a little bit, but I'm not

6   that slow.  So I'm saying how are you going to deny all the

7   motions when one of them is saying, "Can I pick a jury?  I'm

8   entitled to pick a jury, right?"  "Oh, yeah, okay, that motion

9   is granted."  "Well, can we go through all of my other

10  motions?"  "No, motions denied."  And this is why I need those

11  transcripts.  So I don't know if I can subpoena those because I

12  need to show that the prejudice that if I ask these guys 900

13  questions, they're already prepared for when we go to trial.

14  He's going to ask this, he's going to ask that.  They're

15  already practicing.  So, what do I got to sit there and think

16  of another 900 questions?  That's pretty hard.  And he's a

17  lawyer, I'm not.  So I got to sit there and out think him and

18  stuff to get what they stole from me and to get compensated?

19  That's not fair.  I need the policy to say well why didn't you

20  -- why didn't they use the video?  Why didn't they do this?

21  Why didn't they do that?

22          And on that merit, since there's a crime that's

23  involved in this case on that merit, that should be enough for

24  me to show to the jury to establish what they did to me, to

25  establish everything because they didn't follow policy.  Now,

84

1  if you didn't follow policy, that's saying where there's some

2  type of coverup.  Why didn't you all do this?  Why didn't you

3  do that?  And that's -- and I'm sorry to sound a little --

4          THE COURT:  No, it's fine.  I don't want to cut you

5  off.  It sounds like you're basically done?

6          MR. GOODWINE:  Yes.

7          THE COURT:  Okay.  Well, a couple of things.  I'm

8  going to start with the last one just while it's freshest in my

9  mind which is to the extent that you're counting on saying to

10  the jury, "They didn't follow policy, or that you'd like to say

11  to the jury they didn't follow policy and somehow you can

12  conclude that they violated my rights," actually I'm recently

13  dealing with a different case where that sort of things comes

14  up in a very different context.  But the instruction the jury

15  gets if a policy is set before them and the plaintiff says the

16  police didn't follow that policy, the instruction the jury gets

17  right after that, and often it's not even allowed to go before

18  the jury, but even if it is, the judge immediately tells the

19  jury, "Look, there may be some reason I'm letting you consider

20  what the policy is, but you have to keep in mind that what the

21  plaintiff has to prove is not that the police didn't follow the

22  policy.  What he has to prove is that the police violated his

23  rights."  And that's why I think in some way, if you'll forgive

24  me for saying so, I think you may be over thinking this.

25          What you have to focus on proving, because the only

1   question that's going to be before the jury is did they violate

2   your rights by arresting you without cause, by using excessive

3   force, by taking your property, you know, in violation of your

4   rights?  And that's why for the most part my suspicion is

5   you're just not going to be allowed to litigate what the policy

6   was, whether you have it, whether you think you have it from

7   somebody else or not.  So that's driving a lot of my decisions.

8           Another thing, to some extent it seems like you're

9   asking me to -- and I don't know if you meant to do this, but

10  to the extent it is, I just want a clear record.  Some of what

11  you said expressed some disagreement with the rulings I've made

12  today.  That's fine.  But to the extent you're asking me to

13  reconsider it, I'm deeming that to be a motion to reconsider,

14  and I'm denying that because I'm adhering to my rulings.  I've

15  thought about them and I think they were the right rulings.

16          I understand what you're saying about rulings made by

17  Judge Pohorelsky.  The fact that a judge recuses does not mean

18  that prior rulings made by that judge in the case are void.  In

19  fact, there is a doctrine called law of the case which says

20  basically, and I'm over simplifying it, once there's a decision

21  made in a case, once the parties have been heard and the judge

22  has made a ruling, even if he has to address every single thing

23  in the ruling, once there's a ruling on an issue, the later

24  judge doesn't come back and revisit that ruling unless

25  something has changed.  And the fact that a judge has recused

1   doesn't change it.  So I understand why you think it's unfair.

2   I disagree with you about it, but to the extent that you are

3   asking me to revisit rulings that Judge Pohorelsky has made

4   because he has recused, or for any other reason, I'm denying

5   that.  Part of the reason I'm doing it is law of the case.

6   Another part of the reason I'm doing it is that a lot of those

7   rulings cover issues about the discovery that you wrote.  And

8   I've been very careful, and we've been at this for about two

9   and a half hours now, I've been very careful to try and get

10  from both sides the specific items of discovery that each side

11  thinks it needs or has asked for and hasn't got.  And I think

12  we've covered that pretty exhaustively.  So I think outside the

13  rulings I've made, even without going back to Judge

14  Pohorelsky's ruling, we've covered what both sides need to be

15  able to get a fair trial on the issues in dispute here.

16          And in saying that, I understand that you disagree

17  with me about what the scope of those issues should be.  But I

18  think I'm going to leave it at that.  I've made rulings.  I've

19  given you some tasks on both sides to be done over the next few

20  weeks.  I'm not going to go back and summarize all of them now.

21  But the basics are providing a description of the lost and

22  found policy, the telephone deposition about a week from today,

23  both sides disclosing to each other any documents that they

24  haven't already provided that they're going to use at trial.

25  We discussed some other things on the 25 interrogatories per

1  individual defendant.  The two of you are going to sit down

2  today, you're welcomed to use this room by the way, and go over

3  them with the principles that I outlined before in mind.  There

4  are some outstanding motions on the docket I want to address.

5  I'm not going to hear argument on them because I think that

6  it's implicit what we've discussed already.  But to the extent

7  that Amtrak has moved to dismiss the case for lack of

8  prosecution, that's docket 66, I think it was implicit in Judge

9  Melancon's discussion with you recently that that was denied.

10 But to the extent it isn't, I am respectfully denying --

11 respectfully recommending that that motion be denied.

12        With respect to Amtrak's motion, docket 68, for a

13 protective order with respect to Mr. Goodwine's supplemental

14 discovery request, I'm going to deem that motion to be moot in

15 light of the rulings made today with respect to discovery.

16        Same thing with respect to Amtrak's motion, docket

17 70, for more compelling further deposition.  I've addressed

18 that today.

19        And finally, with respect to Amtrak's motion, docket

20 71, for sanctions against Mr. Goodwine for failure to produce

21 discovery, that's denied.  My whole purpose today is to get

22 this case moving forward without too much time revisiting the

23 past.

24        So that's it.  Gentlemen, you've both spent a lot of

25 time today going through this patiently.  I appreciate it.  Mr.

1  Goodwine, you have your hand up.

2          MR. GOODWINE:  I just have something, maybe we can

3  work it out, on the complaint that I filed I believe I wrote

4  some information on the back.  They only gave me the front

5  page.  Would you happen to have the original so I can get the -

6  -

7          THE COURT:  I'm sure you'll work that out.  Yes.  To

8  the extent you have the back, you'll give that --

9          MR. GOODWINE:  Now, also one last thing is I filed a

10 protective order since I see how it works in their favor --

11         THE COURT:  Right.

12         MR. GOODWINE:  -- prior --

13         THE COURT:  I'm going to interrupt you there because

14 I'm not going to by silence endorse that concept.  Things don't

15 work in their favor.  I've invested a lot of time this morning

16 and effort to make sure that both sides are getting a fair

17 shake here.  This system is not stacked against you, Mr.

18 Goodwine.  Now go ahead and tell me what it is you have on your

19 mind.

20         MR. GOODWINE:  When I say in their favor, I mean as

21 far as me getting certain information or --

22         THE COURT:  What is your motion for a protective

23 order?

24         MR. GOODWINE:  It was actually for them to do a

25 background check on me.  This was prior when he --

89

1            THE COURT:  Huh?

2            MR. GOODWINE:  That was -- my protective order was

3   prior --

4            THE COURT:  Okay.

5            MR. GOODWINE:  -- information that [indiscernible] --

6            THE COURT:  So you want them to be ordered not to

7   investigate your background?

8            MR. GOODWINE:  I wanted them to not, yes.  And I

9   wanted them --

10            THE COURT:  Okay.  That's denied.

11            MR. GOODWINE:  What?

12            THE COURT:  That is denied.

13            MR. GOODWINE:  To them or to me?

14            THE COURT:  To you.  You don't have a right to

15   prevent them from investigating you.

16            MR. GOODWINE:  No, that was to have that information

17   precluded in trial.

18            THE COURT:  Oh, I don't make evidentiary rulings

19   about what's admissible and what's not.  That's something that

20   you can address to Judge Melancon.  And if they try to

21   introduce it, your criminal record, you can object to it.  Let

22   me give you some guidance.  To the extent -- if you testify --

23            MR. GOODWINE:  I'm not testifying.

24            THE COURT:  You're not going to testify at your

25   trial?

90

1          MR. GOODWINE:  No.

2          THE COURT:  What if they call you as a witness?

3          MR. GOODWINE:  I can't.  I feel it'll be a little bit

4    overwhelming to question and to --

5          THE COURT:  Well --

6          MR. GOODWINE:  I might reconsider but --

7          THE COURT:  I think you should --

8          MR. GOODWINE:  -- I think it's going to be a little

9    bit --

10         THE COURT:  -- because if you don't testify, how are

11   you going to prove your case?

12         MR. GOODWINE:  Well, he has a deposition.  I thought

13   that's what he was going to use.

14         THE COURT:  You're the one that has to prove the

15   case.

16         MR. GOODWINE:  All right.

17         THE COURT:  If you don't present evidence, the case

18   will be dismissed.

19         MR. GOODWINE:  Okay.

20         THE COURT:  So I anticipate either the case would be

21   dismissed because you don't testify, or you will testify.

22         MR. GOODWINE:  All right.

23         THE COURT:  If you testify and you try to portray

24   yourself in a certain way that he thinks is inconsistent with

25   information he has based on your record, he may try to do

1   what's called impeachment.  Say, "Well wait, you say this about

2   yourself.  Isn't it true that there's this other fact about

3   you?"  And you'll say yes or no.  If you say yes, that's the

4   end of it.

5           MR. GOODWINE:  Yeah.

6           THE COURT:  If you say no, then he can then offer

7   evidence to support the fact that actually what he says is

8   true.  Sometimes a criminal record or aspects of a criminal

9   record can be used quite properly for that purpose.  I have no

10  idea if that's going to happen or not in this case, and I

11  wouldn't try to predict.  So it's not out of bounds for a

12  criminal record to be used, but it can only be used within

13  certain limits and only if you do something that's called

14  opening the door to it.

15          MR. GOODWINE:  Okay.

16          THE COURT:  Most likely I'm guessing it's not going

17  to happen, but it's really premature until you get up and

18  testify and they try to offer something to try to resolve that.

19          MR. GOODWINE:  All right.

20          THE COURT:  Okay.

21          MR. GOODWINE:  I just have one question related to

22  that.  How would I object if I'm the witness?  That was my main

23  issue.

24          THE COURT:  Oh well, I think that's a question you

25  should really put to Judge Melancon because he'll be presiding

1  at the trial, how he would like you to do it --

2            MR. GOODWINE:  Okay.  And --

3            THE COURT:  -- but --

4            MR. GOODWINE:  I'm sorry.

5            THE COURT:  Last one.

6            MR. GOODWINE:  Right.

7            THE COURT:  And it really is the last one.

8            MR. GOODWINE:  Now, I contacted a lot of companies as

9  far as like Rolls Royce and Day Provisions and other companies,

10 Kimberly-Clark and stuff like that.  I just want to know can he

11 provide me every company that he's contacted?  Because that's

12 kind of damaging to me on a relationship.  I need to know

13 everybody he's contacted.

14           THE COURT:  That has nothing to do with the issues

15 before the jury.  And I want to explain this, and this is going

16 to be the last thing we discuss and then we're ending.

17           MR. GOODWINE:  All right.

18           THE COURT:  Please respect that.  Discovery, each

19 party gets to have discovery to find -- to ask for things that

20 are reasonably calculated to lead to the discovery of

21 admissible evidence that is relevant to a claim or defense.

22 When you say, "I'd like to know who he's contacted," that is

23 not going to produce evidence that you can put before the jury

24 that is relevant to a claim or defense in this case.  I'm

25 denying it.  That is the end of today's conference.  Thank you

1   both very much.  We are done.

2           MR. ROBERTS:  Thank you, Your Honor.

3           MR. GOODWINE:  I know it's denied.  I just want to

4   ask you something.

5           THE COURT:  Sir --

6           MR. GOODWINE:  It's not --

7           THE COURT:  -- sir, Mr. Goodwine, we're done.

8           MR. GOODWINE:  I understand but Your Honor --

9           THE COURT:  If you understand, then you will say have

10  a good day and leave or go about your business with Mr.

11  Roberts.  Have a good day.

12          MR. GOODWINE:  I want to just --

13          THE COURT:  I wish you all the best.

14          MR. GOODWINE:  Your Honor, I'm sorry, just one thing.

15          THE COURT:  Mr. Goodwine --

16          MR. GOODWINE:  It's only because --

17          THE COURT:  Mr. Goodwine, please.

18          MR. GOODWINE:  Your Honor --

19          THE COURT:  Mr. Goodwine --

20          MR. GOODWINE:  -- you'll understand when I say it.

21  Your Honor, I'm sorry.  The only --

22          THE COURT:  Mr. Goodwine, stop talking, please.  I

23  have been very patient because you deserve that respect as does

24  everybody who comes before the Court.  But I have determined

25  that we have addressed all the issues that are relevant for

94

1  today.  I am not going to accept argument on any further issue

2  or any further inquiries.  If you think that there is some

3  issue that needs to be addressed, feel free to make a motion

4  for relief.  But today's conference is completed.  Have a good

5  day.  The record is closed.

6         MR. GOODWINE:  All right.  The record is closed, but

7  can I just --

8                  [Off the record.]

9         THE COURT:  I'm going to ask, please, that you

10  respect when I say we're done, we are done.  Have a good day.

11         MR. GOODWINE:  All right.

12             * * * * * *

13  [Proceedings ended at 12:38 p.m.]

95

1       I certify that the foregoing is a court transcript from an

2   electronic sound recording of the proceedings in the above-

3   entitled matter.

4

5   _____

6                         Mary Greco

7   Dated:  June 25, 2013