UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

EARL GOODWINE,                                           REPORT AND
                         Plaintiff,         RECOMMENDATION

      - against -

NATIONAL RAILROAD                                        12-CV-3882 (TLM) (JO)
PASSENGER CORPORATION, et al.,
                         Defendants.
--------------------------------------------------------X

James Orenstein, Magistrate Judge:

      Plaintiff Earl Goodwine ("Goodwine") has filed a second Amended Complaint asserting

a variety of claims arising from an encounter with police officers at the New Jersey Transit

seating area of New York Penn Station on January 11, 2010, that resulted in Goodwine's arrest.

Docket Entry ("DE") 34. The named defendants are the National Railroad Passenger Corporation

("Amtrak"), and Amtrak police officers John Williams, Mark Hoyer, Augustus Rivera, and Louis

Rinaldi. The defendants seek summary judgment on all of Goodwine's claims. DE 146. Upon a

referral from the Honorable Tucker L. Melançon, United States District Judge, *see* DE 166, and

for the reasons set forth below, I now submit this report and respectfully recommend that the

court deny the motion with respect to Goodwine's claims against Officers Williams, Hoyer, and

Rivera under Title 42, United States Code, Section 1983, for false arrest and excessive force; in

all other respects, I respectfully recommend that the court grant the motion.[1]

---

[1] While this motion was pending, the court entered an order dated January 16, 2014, directing
Goodwine to show cause in writing, no later than January 27, 2014, why the entire action should
not be dismissed pursuant to Federal Rule of Civil Procedure 41(b) as a sanction for Goodwine's
failure to comply with a court order. DE 229. As the defendants noted in a letter filed on
February 4, 2014, Goodwine has not complied with the latter order. DE 243. I express no view
here as to what sanction, if any, is appropriate for Goodwine's failure to discharge his procedural
obligations. My recommendation on the instant motion for summary judgment is predicated
exclusively on my analysis of the merits of that motion, and does not consider whether there may
be any independent basis for dismissing some or all of Goodwine's claims.

I.     Background

   A.     Facts

   Rather than provide a detailed summary of the facts relevant to all claims at this point, I will provide a brief overview here and discuss additional facts relevant to particular issues below. Briefly stated, on the morning of January 11, 2010, Goodwine was seated in the New Jersey Transit waiting area of New York Penn Station. DE 146-4 (Defendants' Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1) ("Rule 56.1 St.") ¶¶ 3, 13. Amtrak Officers Williams, Hoyer, and Rivera approached Goodwine and, after some discussion, ordered Goodwine to leave the seating area, warning that they would arrest him if he refused to comply. *Id.* ¶ 33. As set forth below, the parties dispute whether Goodwine had a valid ticket and so informed the officers. *Compare Id.* ¶¶ 23-28, *with* DE 238 (transcript of proceedings dated February 14, 2013) ("2/14 Tr.") at 9-10. The parties agree that Goodwine insisted that he had done nothing wrong and that he had a right to remain in the seating area; he refused to leave, and the officers placed him under arrest. Rule 56.1 St. ¶¶ 3, 6, 21-22.

   The officers handcuffed Goodwine and escorted him out of the seating area. *Id.* ¶ 6. After initially walking with the officers, Goodwine stopped walking on his own; the parties dispute whether Goodwine simply refused to continue walking or instead fell because he was unable to keep up with the officers' fast pace and then found himself unable to walk further. *Id.* ¶¶ 6, 13. Goodwine contends that the three officers then picked him up and carried him to the command station, and that on the way, they intentionally dropped him face-first to the ground from a height of three feet, causing Goodwine to sustain injuries. *Id.* ¶ 45. The officers deny that they dropped him. *Id.* ¶¶ 51-52.

Goodwine contends that he had certain valuable documents in his possession at the time of his arrest, although he has never described most of them with any specificity. *See, e.g.*, 2/14 Tr. at 24-25. He further claims that the defendants have never returned those documents. DE 34 (second Amended Complaint) at 5-6.

Officer Rinaldi was present at the command station when the other defendant officers arrived with Goodwine in their custody. Rule 56.1 St. ¶ 7. Later, in response to Goodwine's administrative complaint about his arrest and alleged injury, Officer Rinaldi conducted an internal investigation of the matter and concluded that Goodwine's complaints were unfounded and that no remedial action was warranted. *Id.* ¶¶ 61-65.

B.    Proceedings

I summarize here only the portions of the extensive procedural history of this case pertinent to the instant motion, and assume the reader's familiarity with the many unrelated motions that have previously been filed and resolved. Goodwine filed his original complaint in state court on July 10, 2012, naming only Amtrak as a defendant. DE 1 at 4-12. Amtrak then removed the case to this court on August 6, 2012. DE 1. Goodwine filed an amended complaint on November 27, 2012, again naming only Amtrak as a defendant. DE 10. Amtrak moved to dismiss that pleading on December 17, 2012. DE 11.

The court heard argument on the dismissal motion on February 14, 2013. *See* DE 29 (minute entry). As discussed further below, the court denied the motion and ruled that Goodwine's Section 1983 claims for constitutional violations arising from the alleged false arrest and excessive force could proceed. The court further ruled that Goodwine could file a second amended complaint, so as to assert the permissible constitutional claims against the individual officers who participated in his arrest. However, to the extent that Amtrak had sought the

3

dismissal of other claims, and to the extent Goodwine sought to assert other claims against Amtrak or others, the record is somewhat ambiguous.[2]

The transcript of the motion hearing plainly conveys the idea that the court intended to allow Goodwine to assert false arrest and excessive force claims against the individual officers and only those claims. Indeed, the only time that the court addressed any other specific claim was when Goodwine sought to discuss his claim for the alleged "theft" of the personal papers he asserted he had in his possession at the time of his arrest. *See* 2/14 Tr. at 24. The court instructed Amtrak's counsel to try to locate and return any such documents, and then informed Goodwine, "You're not going to get damages for that, if they don't have them." *Id*. at 25. To the extent the court said anything else at all about other claims, it appeared to assume that such claims would not proceed. First, as set forth below, the court repeatedly referred exclusively to the "constitutional" claims as being the basis on which the case would proceed. *See*, *e.g.*, 2/14 Tr. at 17 ("I'm going to allow the case to proceed on the constitutional issue."); *id*. at 18 (reiterating that the case "will go forward on the constitutional issue which is the primary issue here as stated by the plaintiff"). Second, as I read the relevant portion of the transcript, it appears that the court was about to rule explicitly that all claims other than the false arrest and excessive force claims under Section 1983 were not viable when Amtrak's counsel interrupted with a question, after which the court never resumed what it had apparently been about to say:

> THE COURT: All right. I'm going to allow the case to proceed on the constitutional issue. It seems to be the only –
>
> MS. NUÑEZ [Amtrak's counsel]: On the 1983 issue, your Honor. Correct?

---

[2] Contributing to the ambiguity is the fact that the district judge who decided the dismissal motion later recused himself and ordered the case reassigned to a new district judge and magistrate judge. *See* DE 72.

THE COURT: You want what, counsel? I didn't hear you.

MS. NUÑEZ: Oh, I'm sorry. I was just confirming that we're proceeding on the 1983 issue.

THE COURT: Yes.

MS. NUÑEZ: If I can, just for the record, Mr. Goodwine did have the name of Officer Hoyer and Williams because those were included in the investigation report that he received.

THE COURT: My ruling stands. He can file an amended complaint with the four officers and you can refer to the prior complaint you made a few days after the event.

MR. GOODWINE: Yes, sir. When she said I had their names, I had –

THE COURT: Excuse me, I'm ruling in your favor. So the less you say the better.

MR. GOODWINE: Thank you.

THE COURT: Motion to dismiss denied. It will go forward on the constitutional issue which is the primary issue here as stated by the plaintiff.

*Id*. at 17-18.[3]

While it thus appears clear that the court contemplated that the false arrest and excessive force claims would be the "only" ones to proceed once Goodwine amended his complaint – and while such a result would have been appropriate for reasons discussed below – it neither said so explicitly nor recorded such a ruling on the docket. Moreover, the only disposition of Amtrak's dismissal motion noted on the record is that the motion was denied. 2/14 Tr. at 18, 25.

---

[3] The magistrate judge then assigned to the case appeared to have read the court's ruling the same way. Notwithstanding the fact that the court had "denied" Amtrak's dismissal motion (rather than denying it in part and granting it with respect to claims other than those for false arrest and excessive force), the magistrate judge explained at a subsequent hearing that the court had allowed Goodwine to proceed only on the Section 1983 claims for false arrest and excessive force. *See* DE 85 (transcript of proceedings dated March 21, 2013) at 3-7. The magistrate judge went on to supplement that explanation by suggesting that Goodwine might also be permitted to prosecute a Section 1983 claim based on an alleged unlawful seizure of personal property in violation of the Fourth Amendment. *Id*. at 7. That observation was in tension with the court's earlier ruling that Goodwine could not recover damages for the loss of his property.

Accordingly, while I do not think it would be erroneous to treat other claims as having already been dismissed, for purposes of analyzing the instant motion, I will nevertheless assume that the court has not yet made any ruling that would preclude Goodwine from proceeding on any of his claims. Instead, as a matter of caution, I assume that if the claims are to be dismissed at this point it should be because an analysis of the merits demonstrates me that they cannot withstand summary judgment – not because they are procedurally barred pursuant to the "law of the case" doctrine.

On March 13, 2013, Goodwine filed his second Amended Complaint. DE 34. The pleading again named Amtrak as a defendant, and also added the three officers who participated in the arrest at issue (Officers Williams, Hoyer, and Rivera), as well as Officer Rinaldi, who was present at the command center to which Goodwine was taken immediately after his arrest, and who conducted an internal investigation in response to Goodwine's administrative complaint. *Id.* The pleading purported to assert a long list of claims, in most instances simply by mentioning them on the document's first page. That list of claims includes the following:

- Entrapment
- Pain and suffering/injuries
- Legal abuse
- Larceny
- ADA
- Aiding and abetting
- Amtrak failures
- Malicious prosecution
- Biasness
- Causation
- Racial profiling
- Conversion damages
- Corp. blameworthy
- False arrest
- Recklessness
- False imprisonment
- Unnecessary, excessive, and deadly force
- Under the color o[f] law 1983
- Obstruction of justice
- Conflict of interest
- Intentional infliction
- Physical abuse misconduct
- Tampering
- Spoliation
- Humiliation
- Discrimination
- Business expectancy
- Pattern of abuse
- Civil liability for conspiracy
- Conspiracy
- Death threats
- False accusation
- Emotional distress
- Independent polygraph
- Abuse of authority
- Abuse of information

6

- Abuse of process
- Mail fraud issues
- Theft
- Slander
- Defamation of character
- Assault with a deadly weapon
- Armed robbery

- Civil and human rights
- Conflict of interest [listed twice]
- Consequential economic damages
- Negligent misrepresentation
- Potential lost and growth
- Freedom of movement
- Patient confidently

*Id.* at 1.[4]

Pursuant to the court's ruling on the earlier motion to dismiss, this latest pleading was deemed served and answered with a general denial at the time of filing.[5] *See* 2/14 Tr. at 11. The parties then went on to complete discovery, after which the defendants filed the instant motion.

II.    Discussion

A.    The Applicable Legal Standard

As a *pro se* litigant, Goodwine is entitled to "special latitude" in opposing the instant motion for summary judgment, *Salahuddin v. Coughlin*, 999 F. Supp. 526, 535 (S.D.N.Y. 1998) (internal citations omitted), and accordingly I interpret his submissions "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal citations omitted). Nevertheless, the "application of this different standard does

---

[4] Aside from regularizing spacing and capitalization, I have rendered each separate claim as set forth in the Amended Complaint. In some instances, I have separated into two items words that appear on a single line of text but that I inferred were intended to assert distinct claims.

[5] In an undated letter filed on December 27, 2013, Goodwine asked the previously assigned district judge to "clear up" his belief that the defendants had failed to address the claims in the second Amended Complaint, and had as a result committed a "fraud upon the court[.]" DE 216. The court referred that letter to me. DE 217. As set forth above, it is not the case that the defendants have failed to address the claims in the second Amended Complaint. Rather, they were deemed to have denied those claims without the need for further action once the court allowed Goodwine to add them to his complaint. *See* DE 43 at 1; 2/14 Tr. at 11. In any event, the instant motion unequivocally constitutes an attempt by the defendants to address all of the claims in the second Amended Complaint on the merits. Accordingly, to the extent Goodwine's letter seeks any relief based on the contention that the defendants have failed to respond to the claims in the second Amended Complaint, I respectfully recommend that the court deny the request on the ground that the defendants have done everything necessary to answer the pleading.

not relieve [a] plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (internal citations omitted). Thus, even where the plaintiff is proceeding *pro se*, a defendant's motion for summary judgment must be granted if the motion and supporting papers demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also*, *e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

In determining whether a genuine issue of material fact exists, "the court must draw all reasonable inferences in favor of the nonmoving party." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Further, the burden of showing the absence of any genuine dispute as to a material fact rests on the movant. *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (citing *Celotex*, 477 U.S. at 323); *see also Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). However, to defeat a summary judgment motion, Goodwine must do "more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, he must "come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (emphasis in original) (internal citation omitted); Fed. R. Civ. P. 56(c)(1)(A) (requiring the non-movant to "cit[e] to particular parts of materials in the record"). Unsupported or conclusory statements will not suffice to meet this burden, *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002), and where a non-movant simply fails to respond to the motion or fails to submit a response to the movant's statement of uncontested facts, "the Court may accept [the movant's] facts as true." Loc. Civ. R. 56.2 (Notice to Pro Se Litigant Who

Opposes a Motion For Summary Judgment);[6] *see also Vermont Teddy Bear Co. v. 1–800–Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) (citing the local rule with approval).

At the same time, a party's failure to respond to a summary judgment motion, or to submit a statement of disputed facts, "does not [alone] justify the granting of summary judgment." *Vermont Teddy Bear Co.*, 373 F.3d at 244. Instead, as the Second Circuit has explained,

> where the non-moving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden.... Moreover, ... the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement [but] must be satisfied that ... evidence in the record supports the assertion[s contained therein].... An unopposed summary judgment motion may also fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law.

*Id*. (internal quotations omitted) (citing, *inter alia*, *Giannullo v. City of New York*, 322 F.3d 139 (2d Cir. 2003)). In short, just as with a contested motion for summary judgment, the court "must review the motion ... and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." *Id*. at 246 (quoting *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993)).

B.     Claims Against Officer Rinaldi

The record reflects that no later than April 25, 2013, the defendants' counsel notified the court and Goodwine that Officer Rinaldi had died. DE 54 (letter responding to order dated April

---

[6] I note that the defendants complied with Local Rule 56.2 and provided Goodwine with notice that his failure to respond to their motion for summary judgment would have this consequence. DE 146-1; *see also*, *e.g.*, *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620 (2d Cir. 1999) (noting that "it is not obvious to a layman that when his opponent files a motion for summary judgment supported by affidavits he must file his own affidavits contradicting his opponent's if he wants to preserve factual issues for trial," and holding that fair notice is therefore a condition precedent to entry of summary judgment against a *pro se* litigant) (internal citation omitted).

12, 2013, DE 45, directing Officer Rinaldi to submit an affidavit relating to certain factual

issues). Over nine months has passed since the suggestion of the officer's death on the record,

and in that time neither any party nor any successor or representative of Officer Rinaldi has

asked the court to order the substitution of a proper party, such as the administrator of Officer

Rinaldi's estate, in the officer's place. Accordingly, the court "must" dismiss all claims against

Officer Rinaldi. Fed. R. Civ. P. 25(a)(1).

      C.     <u>False Arrest</u>

          1.     <u>Individual Defendants</u>

     The individual defendants contend that they are entitled to summary judgment because

they had probable cause to arrest Goodwine for trespassing, disorderly conduct, and resisting

arrest and because, at a minimum, they are entitled to qualified immunity. As explained below, I

disagree.

     The defendants contend that Officers Williams, Hoyer, and Rivera asked Goodwine to

produce a valid train ticket, that Goodwine did not comply, and that he then refused their

command to leave the seating area reserved for ticket-holding passengers. DE 146-3 (Amtrak's

memorandum in support of summary judgment) ("Memo.") at 4. If the jury accepts that version

of the facts, it will be entitled to conclude that the officers had probable cause to arrest Goodwine

for trespass. However, Goodwine asserts that he did have a valid ticket that entitled him to be

present in the waiting area in which he was arrested, that he so informed the defendants, and that

he believes he showed them the ticket when they demanded to see it. *See* 2/14 Tr. at 9-10. In

support of that assertion, Goodwine will seek to introduce in evidence a ticket (or a photocopy of

one) of the type he says he had, that he contends an unknown Amtrak worker signed. *See* DE 195

(Goodwine's memorandum opposing summary judgment) ("Opp.") at 30 (photocopy of

document on which Goodwine has written the following: "Here is a ticket where a[n] Amtrak worker sign[ed] everything[.] I sat in their waiting area[.] I need his name to call as a witness that everday [sic] he was there. I had a fresh ticket [that was] valid."). If a jury were to accept Goodwine's account, it would necessarily reject the proposition that the defendant officers had probable cause to arrest him for trespass and it would also necessarily reject the proposition that it was reasonable for the officers to believe they had such probable cause.

Similarly, if the jury accepts Goodwine's account of his encounter with the officers, it will necessarily reject the proposition that the officers had (or reasonably believed they had) probable cause to arrest Goodwine for disorderly conduct. Indeed, even under the defendants' version of events, Goodwine did no more than engage the officers in argument in the presence of others and dare them to arrest him for a trespass. Memo. at 5. The defendants do not satisfactorily explain why those facts, without more, would support (or reasonably be understood to support) probable cause for an arrest for disorderly conduct, and they cite no supporting legal authority for their argument.

The absence of any meaningful argument on the point is understandable, because it appears contrary to applicable law. To have a valid basis to arrest Goodwine, the officers must have had (or must reasonably have believed they had) probable cause to believe that Goodwine had engaged in conduct that was public in nature; that he did so with the "intent to cause public inconvenience, annoyance or alarm" or with recklessness "creating a risk thereof[;]" and that his conduct fell into one of the following seven statutory categories: (1) "engag[ing] in fighting or in violent, tumultuous or threatening behavior;" (2) "mak[ing] unreasonable noise;" (3) "us[ing] abusive or obscene language, or mak[ing] an obscene gesture" in a public place; (4) disturbing "[w]ithout lawful authority … any lawful assembly or meeting of persons;" (5) "obstruct[ing]

vehicular or pedestrian traffic;" (6) "congregat[ing] with other persons in a public place and refus[ing] to comply with a lawful order of the police to disperse;" or (7) "creat[ing] a hazardous or physically offensive condition by any act which serves no legitimate purpose." N.Y. Penal Law § 240.20 (McKinney 1965); *see, e.g., Provost v. City of Newburgh*, 262 F.3d 146, 157 (2d Cir. 2001); *Wood v. Town of East Hampton*, 2014 WL 60087, at *11 (E.D.N.Y. Jan. 7, 2014).

While Goodwine's encounter with the police unquestionably occurred in public, the defendants do not sufficiently establish that there was probable cause to believe that Goodwine – even when he arguably taunted the police into arresting him – acted with the requisite intent to cause or recklessly risk public inconvenience, annoyance or alarm. In seeking to establish the intent element, they rely exclusively on Officer Williams' conclusory report that Goodwine's behavior "resulted in public inconvenience, annoyance, and alarm, and a risk thereof in that it caused people to leave and avoid the area." Rule 56.1 St. ¶ 30 & Ex. D.  Such allegations are insufficient – Williams does not report any specific facts that support his parroting of the statutory language, nor does he explain either how he can infer that passengers left a waiting area because of Goodwine's conduct (rather than for the purpose of boarding the trains for which they had been waiting) or how he came to believe that other people in the station had avoided the seating area because of Goodwine's conduct (rather than because they were simply on their way elsewhere). Similarly, the only one of the seven statutorily described categories of conduct that appears even remotely apposite to the facts of this case is the one that prohibits congregating with other persons in a public place and disobeying a lawful command to disperse. For this element, the defendants again rely on Officer Williams' report, particularly the portion that asserts that Goodwine was "congregating with several other people at the above location." DE 146-8 at 2. The defendants do not identify anyone with whom Goodwine was "congregating" and

the record suggests that he was alone, albeit in the presence of others. Indeed, Officer Williams himself swore, in the same accusatory instrument, that Goodwine was in a seating area reserved for ticketed passengers and "was not in the company of a ticketed passenger[.]" *Id*. at 1-2. Moreover, there is absolutely no evidence that any officer instructed the congregation of which Goodwine was allegedly a member to disperse, as required to plead the offense of disorderly conduct; instead, Officer Williams reports only that he instructed Goodwine alone to leave the seating area. *Id*. at 2. A group can disperse; an individual cannot.

Finally, the defendants argue that they had probable cause to arrest Goodwine because he physically resisted when "the officers attempted to place handcuffs on him[.]" Memo. at 5. That argument necessarily fails, as the arrest at issue had by definition already occurred by the time the officers sought to place Goodwine in handcuffs. Moreover, if Goodwine can persuade a jury that the officers knew they lacked probable cause to arrest him for other offenses, the jury would necessarily also conclude that the officers could not reasonably believe that it was unlawful for Goodwine to resist being placed in handcuffs. *See*, *e.g.*, *Cameron v. City of New York*, 598 F.3d 50, 68 (2d Cir. 2010) (citing *People v. Stevenson*, 31 N.Y.2d 108, 111 (1972) ("[T]he crime of resisting arrest does not occur if the arrest is illegal or unlawful.")); *Jackson v. City of New York*, 939 F. Supp. 2d 235, 258 (E.D.N.Y. 2013) ("It should have been clear to all Defendants that their use of force against and tight handcuffing of Plaintiff were unlawful under the circumstances of her justified resistance to false arrest and excessive physical force."). Moreover, Goodwine has consistently and explicitly denied resisting arrest. *See*, *e.g.*, Rule 56.1 St. ¶ 13. Accordingly, there is at a minimum a genuine dispute of material fact as to whether there was any valid basis for the officers either to arrest Goodwine or to form the reasonable belief that probable cause

existed for his arrest. I therefore respectfully recommend that the court deny the individual defendants' request for summary judgment on the false arrest claim under Section 1983.

>2.     Amtrak

Reading the second Amended Complaint liberally, it appears that Goodwine asserts that Amtrak is liable for his improper arrest because it was negligent in the hiring, retention, and supervision of the arresting officers. *See* DE 34 at 2 (section of second Amended Complaint entitled "Amtrak failures and cause of injuries and my damages"). Amtrak acknowledges that such theories, if proved, are legally viable bases for holding it liable under Section 1983. *See* Memo. at 13 (citing cases). It contends, however, that the record contains no evidence to support such a theory, and in fact demonstrates that Amtrak had no reason to believe that any of the four defendant officers had ever engaged in any misconduct. *See id.*; Rule 56.1 St. ¶ 73 & Ex. O (personnel records).[7] Goodwine does nothing to refute that argument in his response to the motion; instead, he merely asks a series of rhetorical questions in support of his insistence that "[a]ll claims against Amtrak must stand." Opp. at 16. Such argument does not suffice. In the absence of any evidence in the record that could even remotely be interpreted to support the proposition that Amtrak was negligent in the hiring, retention, or supervision of the four named defendant officers, I conclude that the false arrest claim against Amtrak should be dismissed.

>D.     Excessive Force

>1.     Individual Defendants

In seeking summary judgment on the excessive force claim, the defendants do not argue that Goodwine's allegations, if accepted by the jury, would not support a finding of liability.

---

[7] I include Officer Rinaldi in the analysis because Amtrak could in theory be liable for negligently hiring, retaining, or supervising him regardless of whether the officer himself might for other reasons be immune from suit.

Instead, they contend that Goodwine's "bare assertion" that the officers dropped him head- or face-first onto the floor from a height of three feet is contradicted by other, presumably more reliable, evidence in the record from other sources. Memo. at 6. That is a paradigmatic example of the kind of genuine issue of material fact that must be left to a jury to determine. I therefore respectfully recommend that the court deny the motion and allow the excessive force claim to proceed to trial against the three surviving officers.

       2.    <u>Amtrak</u>

For the reasons discussed above with respect to the false arrest claim, I respectfully recommend that the court dismiss the excessive force claim against Amtrak. As previously explained, the record contains absolutely no evidence that would support a finding that Amtrak's negligent hiring, retention, or supervision of any of the officers resulted in the use of excessive force against Goodwine.

       3.    <u>Damages</u>

The defendants argue that the court should preclude any award of compensatory damages for physical injuries because Goodwine has not adduced any medical records or expert opinion testimony to support his claim that the officers injured him. Memo. at 17-18. I disagree. There is no reason why a lay jury cannot adequately assess Goodwine's testimony that he suffered physical injury as the result of the conduct he attributes to the officers, and no reason why the jury should be precluded from awarding appropriate compensatory damages if it accepts Goodwine's account. In arguing to the contrary, the defendants rely exclusively on the following quote from a manifestly distinguishable case: "[E]xpert medical opinion evidence is usually required to show the cause of an injury or disease because the medical effect on the human system of the infliction of injuries is generally not within the sphere of the common knowledge

15

of the lay person." *Barnes v. Anderson*, 202 F.3d 150, 159 (2d Cir. 1999) (internal quotation

marks and citation omitted) (quoted in Memo. at 17).

Even taken at face value, the quotation does not preclude a compensatory damages award

here: the court in *Barnes* purported to provide a rule that applies "usually" – not always. *Id.*

Moreover, the opinion reasons that expert evidence is "usually" required because lay jurors

"generally" cannot discern the causal link between external cause and medical effect. *Id.* The

court need not quarrel with that proposition to recognize that a lay juror is eminently capable of

determining whether a person who is dropped face-first from a height of three feet onto the

ground is likely to sustain physical injury. Taking into account the context of the *Barnes* decision

serves to distinguish it even more readily: in that case, a plaintiff sought to attribute her

miscarriage to a courtroom incident months earlier in which she was allegedly subjected to

verbal and physical mistreatment (notwithstanding the fact that she had been physically assaulted

shortly before the miscarriage). *See id.* at 152-53. It was in that context that the court concluded

that, "particularly in the circumstances of the present case, a miscarriage is the sort of complex

injury for which expert medical evidence of causation is required." *Id.* at 160. It is simply

impossible to glean from that decision a rule of general application that a *pro se* plaintiff must

adduce objective medical evidence or expert medical opinion to secure compensatory damages

for any injury caused by a police officer's unconstitutional use of excessive force. I therefore

recommend that the court decline to preclude an award of compensatory damages on the

excessive force claim.

 E. <u>Defendants' Arguments Regarding Other Claims</u>

 The defendants have raised a series of arguments supporting their motion to dismiss all of

the remaining claims in the second Amended Complaint. For the reasons discussed below, all of

Goodwine's remaining claims should be dismissed. Because Goodwine's complaint contains so many claims, and because many of those claims are manifestly frivolous or, at a minimum, suffer from a number of independently fatal defects, it would be impractical for this report to discuss each possible basis for dismissing each such claim. Instead, I summarize the sufficient bases for dismissing the claims other than false arrest and excessive force under Section 1983; however, my failure to cite other reasons for dismissal does not mean that there are no such reasons.

1.   Malicious Prosecution

As the defendants correctly note, Goodwine's claim for malicious prosecution under Section 1983 requires him to establish, among other things, that he was subjected to a criminal proceeding that ended in his favor. Memo. at 6 (citing cases). There is no evidence in the record, however, that the criminal proceeding resulting from the arrest at issue here has ever been terminated – let alone terminated in Goodwine's favor. To the contrary, the record establishes (and Goodwine does not dispute) that Goodwine was arraigned on charges arising from his arrest on January 11, 2010, in Manhattan Criminal Court, and that he thereafter failed to appear as required. Rule 56.1 St. ¶¶ 53-54 & n.1 (reporting that, according to the assigned prosecutor, the case remained open, and a bench warrant for Goodwine's arrest remained outstanding, as of the date of the motion). Goodwine testified that his attorney in the criminal case never told him that the case had been dismissed. Rule 56.1 St. ¶ 55.[8] Accordingly, Goodwine cannot establish the elements of his malicious prosecution claim, and that claim should therefore be dismissed.

---

[8] The most Goodwine can apparently say about the status of his criminal prosecution is that he was at some point told by Amtrak's counsel in this case – presumably after the start of this action – that she believed the criminal case had been dismissed. DE 146-11 at 38 (transcript of Goodwine's deposition, at 143). At best, such evidence is double hearsay and therefore inadmissible; accordingly there is no competent evidence in the record to support an inference that the prosecution about which Goodwine complains was terminated in his favor.

2.    Abuse of Process

I agree with the defendants both that Goodwine has failed to plead the elements of an abuse of process claim under Section 1983 and that the record contains no evidence that could support such a claim. As the defendants correctly argue, the claim impermissibly rests on an arrest leading to a criminal prosecution. *See* Memo. at 8 (citing *Hoffman v. Town of Southampton*, 893 F. Supp. 2d 438, 446 (E.D.N.Y. 2012) (citing *Savino v. City of New York*, 331 F.3d 63, 77 (2d Cir. 2003)). I therefore conclude that the court should dismiss the abuse of process claim.

3.    Spoliation

To the extent that Goodwine asserts a cause of action under Section 1983 on the theory that some or all of the defendants violated his constitutional rights through the spoliation of evidence, I agree with the defendants that they are entitled to summary judgment in their favor. In support of their argument, the defendants cite several opinions in criminal cases. *See* Memo. at 9 (citing cases). Those cases are of limited utility in the context of this case, as they do not establish what the elements of a civil claim for spoliation might be. But I agree that the cited cases do support the proposition that such a claim cannot prevail in the absence of any reason to believe that the allegedly spoliated evidence existed, was exculpatory, and was destroyed as the result of a government actor's bad faith. The record here does not establish any of those facts. There is nothing in the record to suggest that there has ever existed a video recording that captured Goodwine's encounter with the Amtrak police, much less that any such recording would support Goodwine's account of the events. *See* Rule 56.1 St. ¶¶ 56-59. Moreover, nothing in the record provides any explanation for the fact that no such video exists aside from the fact that

Amtrak routinely recycles its surveillance videos no more than 60 days after recording them and that Goodwine never sought access to such video recordings until years after his arrest. *Id.*

In his response to this part of the defendants' motion, Goodwine asserts only that Officer Rinaldi "as a defendant had all the reason to cause spoliation" and that "Amtrak knew 3 days after my arrest that this video was vital." Opp. at 17. Neither response suffices to withstand summary judgment. First, even accepting Goodwine's argument about Officer Rinaldi at face value for purposes of discussion, neither the officer nor Amtrak became a "defendant" until long after any video recording of Goodwine's arrest – if it ever existed – had been recycled pursuant to routine procedures. Accordingly, the motive for spoliation Goodwine proposes did not exist at the time any spoliation occurred. Second, the only reason Amtrak, as an institution, would have had any reason to believe that a video recording of Goodwine's arrest would be "vital" was that Goodwine filed an administrative complaint three days after his arrest. *See* DE 34 (second Amended Complaint) at 3 (referring to "my complaint from 1/14/10"). But such speculation about Amtrak's motivation to defend against an administrative complaint does not bridge the gap in Goodwine's reasoning: it does nothing to establish that any video recording had actually captured Goodwine's arrest, or to establish that anyone at Amtrak knew about the existence of any such video before the recording was routinely recycled. Indeed, as Goodwine asserts elsewhere in his response, Officer Rinaldi – the Amtrak official charged with investigating Goodwine's complaint – "fail[ed] to obtain the video of [the] arrest[.]" Opp. at 7. If Officer Rinaldi did not obtain the recording, there is simply no evidentiary basis for a fact-finder to conclude that anyone at Amtrak engaged in the spoliation of exculpatory evidence. I therefore respectfully recommend that the court dismiss Goodwine's claim for spoliation or the destruction of evidence under Section 1983.

19

4.    <u>Lost Documents</u>

The record does not support a claim of any sort predicated on Goodwine's contention that his arrest resulted in the loss of certain documents. Goodwine contends no more than that he had some (mostly unspecified) documents in his possession at the time of his arrest, and that those documents were not later returned. *See* DE 34 (second Amended Complaint) at 3 (alleging that after his release from custody, Goodwine "noticed 3 thing[s] missing"). Such pleading does not state a claim for a constitutional violation, as it does not allege (and the record does not establish) that any of Goodwine's possessions were initially confiscated in violation of the Fourth Amendment – to the contrary, the record establishes that the officers logged the confiscation of a number of items of Goodwine's property at the time of his arrest and returned all of those items upon Goodwine's release from custody. *See* Rule 56.1 St. ¶¶ 68-69. Nor does an allegation that items seized pursuant to an arrest were "missing" upon Goodwine's release support a cause of action for theft or conversion in the absence of any allegation that any defendant intentionally withheld Goodwine's property. Moreover, although the court has not previously dismissed any of Goodwine's claims, it has already ruled that Goodwine may not recover any damages for the loss of his personal property. *See* 2/14 Tr. at 25 (directing Amtrak to return Goodwine's papers if possible and then telling Goodwine, "You're not going to get damages for that, if they don't have them.") I therefore conclude that any claim Goodwine has asserted arising from the alleged loss of his personal papers should be dismissed.[9]

---

[9] If the court accepts this recommendation, it need not reach the issue of whether Goodwine should be precluded from seeking compensatory damages for the loss of any of his papers. The defendants argue that none of the four specific documents Goodwine has identified with any particularity had any reasonably ascertainable value. *See* Memo. at 18-20. While I agree with them to an extent, I disagree that a jury would be unable to ascertain the reasonable value of at least one of the items: a newspaper clipping of Goodwine's father's obituary. For that reason, and also for reasons of judicial economy, I instead recommend that if the court allows a claim based

5.      Other Federal Statutory Claims

In the middle of the second Amended Complaint, inserted into a series of otherwise

unrelated factual assertions about his arrest and its aftermath, Goodwine includes the following

text, which I reproduce verbatim:

> *Disaster relief and emergency assistant act provides me relief without
> discrimination as a person with disabilities prior (in any aspect of life) which for
> me this is
>
> *Rehabilitation act of 1973 protects me (disable) from discrimination by
> organizations such as Amtrak
>
> *Us code title 42 chapter 21- civil rights prohibits discrimination against me from
> Amtrak
>
> *Architectural barriers act of 1968 requires government funded buildings to be
> accessible for disable yet I was cuffed to a wall while in a jail cell not
> accommodating this is Discriminating ADA also as an Afro American it
> discriminating knowing that other ethnic groups are not treated so harsh for 1st
> amendment expression I was humiliated an perceived it as subliminal for I was
> not combative nor a dangerous animal having to be cuff to a wall while encage
> was unwarranted.

DE 34 at 4.

To the extent the passage quoted above is intended to assert claims under federal statutes

other than Section 1983, the claims should be dismissed. None of those statutes does anything to

regulate the conduct about which Goodwine complains, and the defendants correctly note that

nothing in the record supports the proposition that Goodwine is disabled. Memo. at 15. Thus, any

federal statutory claim other than the Section 1983 claims discussed above should be dismissed.

---

on the personal papers to proceed to trial, it deny the defendants' request to preclude
compensatory damages without prejudice to revisiting the issue on a motion at the appropriate
time pursuant to Rule 50 or 59 of the Federal Rules of Civil Procedure for dismissal or remittitur.

6.     <u>State Law Claims</u>

I agree with the defendants that all of Goodwine's tort claims under state law – including claims for false arrest, false imprisonment, assault, slander, defamation, and intentional infliction of emotional distress – are subject to a one-year statutory limitations period. I further agree that any such claim accrued at the time of Goodwine's arrest on January 11, 2010. Memo. at 15-16. Accordingly, because Goodwine did not initiate this lawsuit until July 3, 2012, *see* DE 1 at 3 (showing date that the state court summons on the original complaint was issued), he is time-barred from asserting any such state law tort claim. All such claims should therefore be dismissed.

7.     <u>Damages for Economic Loss</u>

The defendants contend that Goodwine should be precluded from seeking economic damages on any claim that might proceed to trial because the record establishes that he was unemployed, and therefore had no wages to lose, and also contains no evidence of any specific loss of profits caused by the conduct at issue. *See* Memo. at 21; Rule 56.1 St. ¶¶ 110-14. I agree and respectfully recommend that the court preclude any recovery for economic loss.

F.     <u>Miscellaneous Remaining Claims</u>

In the foregoing discussion, I have addressed the most readily identifiable claims in the second Amended Complaint, but not every one of the items summarily listed as claims on the pleading's first page. To the extent that list includes any claim not addressed above, I respectfully recommend that the court dismiss all of them.

Most of the items in Goodwine's list are not cognizable legal claims. Some are unintelligible or convey essentially no information about the category of legal claim asserted (*e.g.*, "corp[orate] blameworthy," "[b]usiness expectancy," "independent polygraph," "[a]buse of

information," or "[p]otential lost and growth"). DE 34 (second Amended Complaint) at 1. Some items refer to factual or legal concepts that may inform the analysis of a viable legal claim, but are not themselves cognizable as independent causes of action (*e.g.*, "[a]iding and abetting," "Amtrak failures," "causation," "[r]ecklessness," "[u]nder the [c]olor o[f] law 1983," or "[e]ntrapment"). *Id.* Still other items appear to refer to different types of damages that Goodwine claims to have have suffered, rather than to the legal bases for recovering such damages (*e.g.*, "[p]ain and suffering/injuries", or "[c]onsequential economic damages"). *Id.* Yet other items appear to refer to cognizable legal claims that have no conceivable relation to the dispute between Goodwine and the defendants (*e.g.*, "mail fraud issues," "patient confident[iality]," or "[n]egligent [m]isrepresentation"). *Id.* Finally, several of the items plainly relate to the basic facts and legal concepts underpinning the claims that I have previously analyzed – both the viable legal claims that I recommend the court allow to proceed to trial (false arrest and excessive force), and the claims that I conclude are insufficient to withstand summary judgment for the reasons set forth above. *See id.* I therefore respectfully recommend that the court dismiss all claims in the second Amended Complaint except the Section 1983 claims for false arrest and excessive force against the three surviving officers.

III.   <u>Recommendation</u>

For the reasons set forth above, I respectfully recommend that the court deny the defendants' motion for summary judgment with respect to the plaintiff's claims against defendants Williams, Hoyer, and Rivera under Title 42, United States Code, Section 1983, for false arrest and excessive force; in all other respects, I respectfully recommend that the court grant the motion and dismiss with prejudice all other claims.

IV.   Objections

I direct the defendants to serve a copy of this document on the plaintiff by certified mail, and to file proof of service no later than February 7, 2014. Any objections to this Report and Recommendation must be filed on the electronic docket no later than February 24, 2014. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

SO ORDERED.

Dated: Brooklyn, New York
February 5, 2014

_____/s_____
JAMES ORENSTEIN
U.S. Magistrate Judge

24